JOHN GAFFNEY, Plaintiff in Error, v. THE PEOPLE OF THE STATE OF NEW YORK, Defendants in Error.

Upon the trial of an indictment before the Superior Court of the city of Buffalo, in case the regular panel of jurors is exhausted, and it becomes necessary to summon talesmen, the court is not limited to the method prescribed by the twenty-ninth section of the act creating said court (§ 29, chap. 96, Laws of 1854, as amended by chap. 754, Laws of 1857), but it has power to order talesmen to be summoned in pursuance of the provisions of the Revised Statutes (2 R. S., 733, § 3).

Where the evidence of a witness is sought to be impeached by written statements alleged to have been made by him, the writing should be produced to the witness for inspection and examination, and questions as to the contents are not ordinarily admissible.

Upon the trial of an indictment for murder, one C. was examined as a witness for the prisoner, and gave material testimony. Upon cross-examination he testified that on the day of the homicide he made a statement in writing, signed it with his mark, and swore to it. Various questions were then asked him with intent to show that he had made statements in conflict with his testimony. These questions were not objected to. Witness denied the making of such statements. The written statement was produced to the witness, and was also identified by the officer to whom it was made. It contained statements in conflict with C.'s evidence, and substantially as stated in the questions put to the witness. After the prisoner's counsel rested, this statement was offered in evidence by the prosecution. It was objected to as incompetent. *Held*, that the objection was properly overruled; that if any part of the statement was objectionable as not relating to inquiries which had been made of the witness, that objection should have been specifically taken.

The counsel for prisoner, on his examination of C., showed by him that the written statement was made while he was under arrest, and that he supposed he would be discharged upon signing it. The prosecution then called the officer under whose direction the statement was made, and asked him if he held out any inducement or used any compulsion to induce C. to make and sign it. To this question the prisoner's counsel objected, and objection was overruled. *Held*, no error.

A writ of error from this court to review a conviction and judgment in a criminal case only brings up the record and matters in the nature of a record, together with the bill of exceptions, if any, settled in the case. Only legal errors appearing in the record or by exceptions taken upon the trial can be considered. This court has no power to review an irregularity complained of, not appearing by the record, but occurring out of court, and presented by affidavits attached to the record and contained in the return.

Its jurisdiction is not extended in this respect in cases coming here on writs of error to the Superior Court of Buffalo, by the provisions of section 35 of the act amending the act establishing that court (§ 35, chap. 361, Laws of 1857). By the terms of that section the decisions of the General Term of that court are only to be reviewed here " in the same cases and in the same manner as if made by the Supreme Court."

(Argued November 26, 1872; decided December 3, 1872.)

ERROR to the General Term of the Superior Court of the city of Buffalo to review judgment affirming a judgment of the criminal term of that court, entered upon a conviction of plaintiff in error of the crime of murder in the first degree, in killing one Patrick Fahey.

A motion for a new trial was made at General Term,

founded upon the judgment record, bill of exceptions, and certain affidavits, which presented certain alleged irregularities of the jury. The facts pertinent to the questions presented are sufficiently stated in the opinion.

*Lyman K. Bass* for the plaintiff in error. The Superior Court of Buffalo has no authority to order its talesmen to be drawn from the bystanders or the city at large, in the discretion of the sheriff. (Laws 1854, 228; Laws 1857, 754; Laws 1870, 738; Laws 1839, chaps. 186, 210; Laws 1840, chap. 251.) The provisions of section 29, Laws 1854, chap. 96, which relate to talesmen, must be regarded as imperative. (*Mayor of N. Y.* v. *Furze*, 3 Hill, 612; *The King* v. *Mayor of Hastings*, 1 Dowl. & Ryl., 148 [16 Eng. Com. Law, 23]; 1 Smith Com., 727, "Leases;" 2 Bouvier's Law Dict., 163, "May.") It was error to allow the written statement of the witness Curran, made out of court, to be read in evidence against the accused. (*Morrison* v. *Myers*, 11 Iowa, 538; Roscoe's Crim. Evi., 13; *Queen's Case*, 6 Eng. Com. Law, 117; *Sprague* v. *Cadwell*, 12 Barb., 517; *Mendenhall* v. *Banks*, 16 Ind., 284; *Wiggins* v. *Holman*, 5 id., 501; *McVey* v. *Blair*, 7 id., 590; *Robb* v. *Hackley*, 23 Wend., 50; *Dudley* v. *Bolles*, 24 id., 465; *People* v. *Finnegan*, 1 Park. C. R., 147; Laws 1871, chap. 720, § 16, p. 1648.)

*B. H. Williams* for the defendants in error. The court had authority to summon talesmen as jurors. (*Cool* v. *Smith*, 1 Black., 459; *Wood* v. *U. S.*, 16 Pet., 342; 10 Barb., 448; *Hartford* v. *U. S.*, 8 Cranch, 109; *Brown* v. *County Com'r*, 21 Penn., 37; *Street* v. *Commonwealth*, 6 Watts & Serg., 209; *Bowen* v. *Lease*, 5 Hill, 221; *Williams* v. *Potter*, 2 Barb., 316; *People* v. *Deming*, 1 Hilt., 271; Potter's Dwarris on Statutes, 144, 145, 156; *Ogden* v. *Strong*, 2 Paine, 584; 1 Kent Com., 162; *People* v. *Draper*, 15 N. Y., 532; *McCartee* v. *Orphan Asylum Society*, 9 Cow., 437.) The statement made by Curran was properly admitted in evidence. It was competent for the purpose of contradicting and impeaching him as a witness. (*Crowley* v. *Page*, 7 C. & P., 791; *The*

*State* v. *George*, 8 Ired., 324 ; *Smith* v. *The People*, 2 Mich., 415 ; also Phil. on Evi., 960, vol. 2, 4th Am. ed. ; *Patchin* v. *The Astor Mut. Ins. Co.*, 3 Kern., 268 ; *Clapp* v. *Wilson*, 5 Den., 285 ; 1 Phil. on Evi., 293–296 ; *Stephens* v. *People*, 19 N. Y., 573 ; 17 Mass., 160 ; 9 Cush., 338 ; 3 Gray, 463.)   The reading of the entire statement could not prejudice the prisoner.   (*Shorter* v. *People*, 2 N. Y., 193 ; *People* v. *Gonzales*, 35 id., 49 ; *Starin* v. *People*, 45 id., 341.)   The objection that the statement is incompetent is too general to enable the defence to raise questions of error.   (18 Johns., 544 ; 20 id., 353 ; 5 id., 467 ; 8 id., 495 ; 6 Barb., 335 ; 38 N. Y., 186 ; 6 Trans. App., 242 ; 2 Seld., 235 ; 6 Hill, 407 ; 18 N. Y., 451 ; 32 id., 440 ; 20 id., 32 ; 5 Den., 285 ; 3 Park. Crim. R., 50 ; *McDonald* v. *Smith*, 47 Barb., 530 ; *Shaw* v. *Smith*, 3 Keyes, 316 ; *Wilson* v. *N. Y.*, 3 id , 381 ; *Hochreiter* v. *People*, 1 id., 66 ; *Atkins* v. *Ewell*, 45 N. Y., 753 ; *Jackson* v. *Cooper*, 20 Johns., 357 ; *Newton* v. *Harris*, 6 N. Y., 345 ; *Mallony* v. *Perkins*, 9 Bosw., 572 ; *Elwood* v. *Deifendorf*, 5 Barb., 398 ; *Staats* v. *Hudson R. R. R. Co.*, 23 How. Pr. R., 463.)

ANDREWS, J.   Upon the trial of this indictment the regular panel of jurors having been exhausted and but five competent jurors having been obtained, the counsel for the prisoner moved the court to order and direct that talesman to complete the jury be drawn from the list of jurors for the Superior Court of Buffalo, returned by the assessors of the city to the clerk of that court.

The court denied the motion and directed the sheriff to summon fifty tales jurors ; and from the jurors so summoned, according to this direction, the remaining seven jurors were selected to try the indictment.

The counsel for the prisoner excepted to the refusal of the court to grant the motion, and to the order made.

The Superior Court of the city of Buffalo was created by chapter 96 of the Laws of 1854.

By sections 9 and 10 of the act, civil jurisdiction in specified

cases was conferred upon the court, and by section 31 juris-
diction was given to inquire by grand jury of all crimes, and
to try and determine all indictments found in said court,
or sent there by another court, for crimes committed in the city
of Buffalo.

By the twenty-eighth section a list of petit jurors, to serve
at said court from the residents of the city, is to be made
by the assessors of the city and returned and filed with
the clerk of the court in May of each year; and the twenty-
ninth section declares that, from the list so returned the clerk,
in the presence of one of the justices of the court shall, at
least fourteen days prior to any term of the court for the trial
of issues of fact by a jury, draw thirty-six persons, or such
other number as the court may order, to serve as petit jurors;
and that the persons so drawn shall be summoned by the
sheriff of Erie county, in the manner prescribed by law for
summoning jurors in the Supreme Court.

The order made on the trial was made in pursuance
of the provisions of section 3, title 5, chap. 2, part 4 of
the Revised Statutes, which provides as follows: "When
twenty-four jurors, duly drawn and summoned, do not
appear, or when, by reason of there being one or more
jurors impanneled, or in consequence of jurors being set
aside, or for any other reason there shall not remain twenty-
four ballots containing the names of jurors then attending,
the court shall order the sheriff to summon from the bystanders,
or from the county at large, so many persons qualified to serve
as jurors as shall be necessary to make, at least, twenty-four
jurors, from whom a jury for the trial of the indictment may
be selected."

If this section applies to the trial of indictments in the Supe-
rior Court of Buffalo, there was no error in the order made.
One of the contingencies specified in the section had arisen,
upon which the authority given by the section could be
exercised.

The chapter in which the section is found is entitled:
" Of proceedings in criminal cases." The title preceding the

one containing this section relates to the return and summoning of grand jurors, with their powers and duties: the finding of indictments and proceedings thereon, and other proceedings in criminal cases. And the title containing the section in question is entitled : " Of trials for offences, bills of exception, and other proceedings incident to trial."

There is nothing in the act establishing the Superior Court, of the city of Buffalo, excluding the application to that court of the general provisions of the Revised Statutes relating to the finding and trial of indictments, except in respect to the drawing the panel of jurors for the terms of that court. Many of the provisions manifestly apply.

There is no provision in the Superior Court act in relation to the review of judgments on conviction in criminal cases.

The right of defendant to tender a bill of exceptions is given by section twenty-one of the title in which section three in question is found, and in the same title are provisions relating to evidence to be given on trial of certain indictments, and awarding separate trials in case of persons jointly indicted for a felony, when demanded by either.

That these and other provisions in the title have a general application as well to the Superior Court as to other courts of record having criminal jurisdiction is apparent.

And we see no reason why section three should not be deemed also to apply to that court. If it does not apply, then, until the amendment of the Superior Court act in 1857, there was no provision of law whereby tales jurors could be summoned.

The twenty-ninth section of the act of 1854, before referred to, was amended by chapter 754 of the Laws of 1857, by adding thereto as follows: " The court for the trial of issues of fact or for the trial of indictments may, in its discretion, order talesmen to be drawn from said list, and may order the sheriff to summon the same forthwith, and if any person so drawn as a talesman shall not be found by the sheriff the court may cause the name of such person to be returned to the box."

It is claimed that by this amendment the power of the court to summon additional jurors is limited to the method therein prescribed.

But it is to be observed that the statute of 1857 does not purport to repeal the prior statute applicable to the same subject, nor is there any repugnancy or inconsistency between them. The court by that statute is authorized in its discretion to pursue the method, in procuring additional jurors, therein prescribed, but that method is not in terms or by necessary implication exclusive.

The next question arises upon the admission by the court of a written statement made by one Curran, a witness on the part of the prisoner, offered in evidence by the prosecution.

The theory of the case and the proof on the part of the people was that the death of Fahey was caused by a pistol-shot, fired by the prisoner, in Sweeney's saloon, in Buffalo. The deceased was found by the officers in a dying condition on the sidewalk, a street distance from the saloon. The witness, Curran, testified on behalf of the prisoner, that the deceased, the prisoner, the witness, and some other persons, were together in the saloon shortly before the pistol-shot was fired ; that Fahey left the saloon before the others, leaving behind the prisoner and some other persons, including the witness, engaged in playing cards; that about twenty-five minutes afterward a report came to the door that a man outside was hurt, and that the prisoner with the others, then rose from the table where they were sitting and went out and found the deceased lying upon the sidewalk, wounded and dying.

This was material testimony, and, if true, was inconsistent with the theory of the guilt of the prisoner.

It appeared from the evidence that Curran and others were arrested on the morning of the occurrence, and were detained for examination.

The witness, Curran, testified on his cross-examination that while in custody, and on the day of the homicide, he made a

statement in writing to the superintendent of police, and signed it with his mark, and swore to it.

In reply to an inquiry, whether he did not state that the deceased left the saloon, followed by the prisoner, he said " I do not think I did." He was then asked, " Did you not further state that a report came to the door, shortly after, that some one was hurt?" and he answered "I do not believe I did."

The written statement was then shown to the witness, and he was asked if he signed it, and he said " I do not know; I made my mark to the statement."

The statement was identified by the officer to whom it was made.

After the prisoner's counsel rested his case the written statement of Curran was offered in evidence by the prosecution, and was objected to by the prisoner's counsel as incompetent; the objection was overruled, and the statement was read in evidence.

It is competent for a party on the trial to prove that a witness, on the part of his adversary, has made oral statements inconsistent with evidence upon a material question given by such witness on the trial, for the purpose of impeaching the credibility of a witness, and weakening the force of the evidence. But it is requisite that the party offering the impeaching evidence should first call the attention of the witness to the circumstances under which the statements were made, that he may have an opportunity of correcting the evidence given on the trial, or of explaining the apparent inconsistency between his evidence and his former statements.

The reason of the rule applies as strongly to written as to oral statements made by the witness; and when his evidence is sought to be impeached by written statements, alleged to have been made by him, the writing should be first produced, so that he may have an opportunity for inspection and examination. And as the writing is the best evidence of the statement made by the witness therein, ques-

tions as to the contents are not ordinarily admissible. (*The Queen's Case*, 2 B. & B., 287; *Newcomb* v. *Griswold*, 24 N. Y., 298; Greenleaf on Evidence, § 463; 2 Phillips on Evidence, 962.)

In this case the paper was shown to the witness, and he had the opportunity for examination. There was no objection to the questions asked him as to its contents.

The statements contained in it were material to contradict the evidence of the witness on his examination in chief; and the objection to it, on the ground of incompetency, was properly overruled.

If any part of the statement was objectionable, as not relating to inquiries which had been made of the witness, that objection should have been specifically taken.

And, on examination of the paper, it does not appear to contain any material facts, except such as were conceded, or were within the scope of the contradiction, which the prosecution was authorized to make.

The witness (Curran), on his examination by the prisoner's counsel, testified that the written statement was made while he was under arrest; and that he supposed he would be discharged from the arrest when he should sign the paper.

The officer, under whose direction the statement was made, was subsequently called by the prosecution, and was asked if he held out any inducement or used any compulsion to induce the witness to make and sign it.

To this question the prisoner's counsel objected, and the objection was overruled, and the prisoner's counsel excepted, and the witness answered in the negative.

We perceive no error in this ruling. The prisoner's counsel had given evidence tending to show that the witness, when he made the statement, may have been influenced by fear, or the hope of personal advantage; and the question was designed to dispel this inference, and to show that the statement was voluntary. The only remaining question relates to the irregularity, on the part of the jury, in procuring and reading,

a newspaper report of the trial after the case was submitted to them; and also in reading, during their deliberations, the portion of the Revised Statutes containing the definition of murder and manslaughter.

The allegations upon these subjects are contained in certain affidavits, which are presented, and annexed to the judgment record and the bill of exceptions.

This case comes before us on a return to a writ of error, issued out of this court to the Superior Court.

The Revised Statutes authorize the review of a conviction and judgment in a criminal case upon a writ of error, which, by the well settled doctrine of this court, only brings up the record and matters in the nature of a record, together with the bill of exceptions, if any, which has been settled in the case.

Neither the Supreme Court nor this court can grant a new trial in a criminal case upon the merits. And if this indictment had been found and tried in the Oyer and Terminer, the only remedy, if any, which the prisoner could have had, for the irregularity of which he complained, would have been upon application for a new trial to the court before which the trial was had.

It is only legal errors which can be considered on writs of error; errors appearing in the record, or by exceptions taken upon the trial.

The statute authorizes exceptions to be taken by the defendant upon the trial of an indictment to any decision of the court, and provides that a bill of exceptions may be settled and returned upon a writ of error. (2 R. S., 736, § 21.) And no assignment of errors, or joinder in error, is necessary; but the statute declares that the court shall proceed on the return to a writ of error, "and render judgment upon the record before them." (2 R. S., 741, § 23.) In *Willis* v. *People* (32 N. Y., 715), the prisoner, after his conviction for homicide, made a motion for a new trial upon affidavits tending to show that one of the jurors had, before the trial, formed and expressed an opinion that the prisoner was guilty.

The application was denied, and the Supreme Court, upon the affidavits which had been returned with the record, heard and decided the question raised upon the merits. This court held that the question was not reviewable here; and DENIO, J., said: "The matters stated in the affidavits upon which the motion was made in the Oyer and Terminer took place out of the court. They could not be made to appear by the record, for they formed no part of the proceedings; and they could not be the subject of exception, for they did not take place on the trial, and were not brought to the attention of the court until after the verdict was given."

In the *People* v. *Thompson* (41 N. Y., 1) the prisoner was convicted of manslaughter in the second degree, and, although it appeared by the evidence that the prisoner was not guilty of that offence, the court held that, as there was no exception, it could not reverse the judgment.

These views are decisive against the power of this court to review the irregularity complained of, unless it is given by section 35, chap. 361, Laws of 1857, amending the act establishing the Superior Court. That section declares that the General Term of that court shall have "exclusive power in criminal cases on motion on the indictment, with or without a bill of exceptions, to review its decisions and judgments, and grant new trials; and the *Court of Appeals* shall have exclusive jurisdiction to review the decisions and judgments made at the General Term in criminal cases, *in the same cases, and in the same manner, as if made by the Supreme Court.*"

It is unnecessary to decide whether this section was intended to confer on the General Term of the Superior Court power to grant new trials, except for legal errors committed on the trial, which would appear upon the record or bill of exceptions, if the motion was made thereon.

But this court, by the terms of the act, is only to review the decisions and judgments of the General Term, in the *same cases,* and in the *same manner,* as if the decisions

and judgments had been made and rendered in the Supreme Court.

We are of the opinion that the act in question does not, and was not intended to extend the jurisdiction of this court, in respect to cases coming here on writ of error to the Superior Court; and we reach this conclusion with less reluctance, as, upon a careful examination of the affidavits, we are satisfied that the prisoner was not prejudiced by the misconduct of the jury.

The judgment appealed from must be affirmed.

All concur.   RAPALLO, J., not voting.

Judgment affirmed.