# WHEELING.

## STATE *v.* WILLIAM KINNEY.

Submitted June 17, 1885.—Decided June 27, 1885.

1. To authorize the reversal of a judgment, for the reason that irrelevant evidence has been admitted, the evidence must not only be irrelevant, but it must be of such a nature, that its admission may have prejudiced the prisoner.   (p. 143.)

2. When one is charged with crime, any thing he says or does voluntarily, which can have any bearing toward showing his guilt, is competent to go to the jury for what it is worth, of which the jury alone can judge.   (p. 144.)

3. Any written statement made by a witness, before he gives his evidence before the jury, which tends to contradict his evidence in any material point, is competent; and, if the court refuse to admit it, the judgment will be reversed, and a new trial granted.   (p. 145.)

4. Before such written statement can go to the jury, it must first be shown to the witness, who made it, to give him an opportunity to deny, that it is his, and to give him an opportunity to make any statement he may choose in reference to its execution, and how it was procured, and all the circumstances attending its execution.   (p. 145.)

5. If he denies that he executed the paper, or claims, that it did not refer to the matter, on which he had given evidence, or that it was written at the dictation of the prisoner, then it is competent for the prisoner to contradict these statements, and show how and for what the paper was written ; and the whole matter, the writing and the evidence with reference to its execution, should go to the jury, if the paper in any view of the case tended to contradict the evidence of the witness.   (p. 145.)

The facts of the case sufficiently appear in the opinion of the Court.

*Edwin Maxwell, J. A. Hutchinson* and *John Bassel* for plaintiff in error.

*Alfred Caldwell,* Attorney General, and *Stuart & Blair* for the State.

JOHNSON, PRESIDENT :

In July, 1883, William Kinney was indicted in the circuit court of Doddridge county for the murder of Bernard Doyle.

The prisoner moved to quash the indictment, which motion was overruled, and he pleaded not guilty.

At the November term, 1883, the issue was tried by a jury. The trial continued several days; and the jury came into the court and answered, they were unable to agree, and were discharged, to which the prisoner made no objection. He was tried in July, 1884, the trial continuing until August 6, 1884, on which day the jury rendered the following verdict:

"We, the jury, find the prisoner, William Kinney (of Israel) guilty of murder in the first degree as against him in the within indictment it is alleged; and we further find that he be punished by confinement in the penitentiary." .

Thereupon the prisoner moved to set aside the verdict, on the grounds: First. That it was contrary to the evidence; Second. For erroneous rulings excluding proper and admitting improper evidence; Third. That counsel were permitted to indulge in improper remarks in the concluding argument to the jury.

On August 7, sentence of imprisonment for life was by the court pronounced against the prisoner.

To this judgment and sentence the prisoner obtained a writ of error.

The prisoner saved three bills of exceptions, the first and second to the admission of evidence, and the third to the rejection of certain evidence offered by the prisoner.

There was no exception saved as to the permission of improper remarks in the concluding argument. The evidence or facts proven were not certified. The *first* bill of exceptions shows, that Bernard Doyle was murdered on the night of April 4, 1883, and that one George William Kinney commonly called "Little Bill Kinney" was arrested on the charge of having committed the said murder. And the State having introduced evidence tending to prove, that the prisoner and said George William Kinney, or "Little Bill Kinney" committed said murder; and also evidence tending to show that the prisoner held out inducements to said "Little Bill Kinney" to lay the charge of murder on Alonzo Bee; and further tending to prove that on Monday following April 4, 1883, said "Little Bill Kinney" was in jail in West Union,

Doddridge county, and that the prisoner was not then arrested, or charged with said murder. The State offered a witness, John Kinney, a younger brother of "Little Bill," who proved that he, John Kinney, was in West Union on said Monday and saw the prisoner, who came to witness who was a boy and much lower in stature than the prisoner, and leaning over him, said in a low tone of voice, "Tell your father I want to see him and tell him to come right away." And the State thereupon offered as a witness George Washington Kinney, father of said John and "Little Bill," who proved that John did deliver to him said message sent by the prisoner, and that he went to see the prisoner at his, prisoner's house, but failed to see him he not being at home, that he had no business with the prisoner. The prisoner objected to the testimony of both John Kinney and his father, and moved the court to exclude the same, which motion the court overruled and admitted said evidence, and the prisoner excepted.

Should this evidence have been admitted? If not, it is because it is irrelevant. And if irrelevant, unless it could not possibly have prejudiced the prisoner, the judgment would be reversed because of its admission. To authorize the reversal of a judgment for admitting irrelevant evidence, not only must the evidence be irrelevant, but it must be of such a nature, that its admission may have prejudiced the prisoner. If he may have been so prejudiced, even though it be doubtful whether in fact he was so or not, that is sufficient ground for reversing the judgment. (*Southern Mut. Ins. Co. v. Trear*, 29 Grat. 255; *Payne* v. *Com*. 31 Grat. 855.) We are of opinion, if the evidence was irrelevant, that its admission is ground for reversing the judgment, because we can not say, that the prisoner could not have been prejudiced by such evidence.

But is the evidence here irrelevant? In the trial of Dr. Webster for the murder of Dr. Parkman letters were received by the police-marshal of Boston, which purported to reveal the location of the body; and upon the trial they were proved to have been written by the prisoner to divert suspicion from himself and to prevent a rigid examination of the premises, where the murder was actually committed. (Whar-

ton Crim. Ev., sec. 742.) The numerous fabrications of evidence in behalf of the claimant in the Tichborne case had much influence in leading to the conclusion of his guilt. (Wharton Crim. Ev., sec. 742.) Anything that a person charged with crime says or does voluntarily, which can have any bearing toward showing his guilt, is competent to go to the jury for what it is worth. The evidence may be exceedingly weak, yet the jury have a right to weigh it in connection with the other facts and circumstances of the case, and it is for the jury alone, if the evidence is relevant, to decide what weight it is to have in the case.

The bill of exceptions here shows, that it was proved that Doyle had been murdered, and on the same night " Little Bill Kinney" was arrested for the murder; that the evidence tended to prove that the prisoner was also implicated in the murder; that the prisoner had held out inducements to " Little Bill" to lay the charge of the murder on one Alonzo Bee; and that Monday after the murder, in the town of West Union, he went up to the brother of " Little Bill," and leaned over him and in a low tone of voice said : " Tell your father I want to see him and tell him to come right away." Connected with the other evidence and the message being delivered in a low tone, there seemed to be an air of mystery about it, that was unnatural under the circumstances. " Little Bill" was in jail; he could do nothing. It was natural for the prisoner to suppose, that the father of " Little Bill" would be willing to help him, and while helping him, he might help the prisoner, if suspicion could be thrown on some one else. I do not say that the jury would be justified in coming to this conclusion. But it seems to me that the jury had a right to consider the said evidence and give it such weight, as it ought to have and no more, and that the evidence was therefore relevant, and the court did not err in admitting it. The second bill of exceptions shows, that evidence had been introduced tending to show that the prisoner had held out inducements to " Little Bill Kinney" to lay the charge of the murder of Doyle on one Alonzo Bee ; and the State introduced Mrs. Garrison as a witness, who testified that she was acquainted with " Big Bill Kinney ;" that he stayed all night at her house the night after Doyle was killed; that " Big Bill" said if they would

let him in the jail with " Little Bill" he would find out all about it.   Preston Hufford was also offered as a witness by the State, and said that "Big Bill" was at his grandmother's, the same Mrs. Garrison, who had given the above evidence, the next day after the murder of Doyle and said if they would arrest him on a sham and put him in jail, he could get a confession from " Little Bill."   To this evidence the prisoner objected, but the evidence was admitted, and he excepted.

This evidence was relevant.   It was a circumstance tending to show a desire to have the charge of murder fixed upon some one other than himself.   Whether in connection with the other evidence in the case it should have little or great weight was a question alone for the jury.

The *third* bill of exceptions shows, that the State introduced George William Kinney, who was indicted for the murder of Bernard Doyle, for which he had not been tried, and who had been jointly indicted with prisoner for the murder of Annie Doyle, and who had been tried separately and convicted of the murder of the said Annie Doyle, and sentenced by the court to seventeen years in the penitentiary therefor, and who testified before the jury amongst other things, that he was present and saw the prisoner strike Barney Doyle on the back of the head with an ax, from which he then fell down and died, of which act of killing there was no other direct evidence before the jury; and therefore the defendant having laid the proper foundation therefor, offered evidence tending to show, that said George William Kinney, while confined in jail at Clarksburg after the time of the murder of the said Barney Doyle and Annie Doyle, stated in the hearing of a prisoner confined in jail, that George William Kinney had implicated and charged the prisoner with the murder of the said Bernard and Annie Doyle to save himself, the said George William Kinney.   And thereupon the prisoner to further contradict the said George William Kinney offered to read a certain paper writing in the words and figures following:

"I wod never have done what i did if I had not A ben perswaid to by them that is a presecution; it is hard for to stand that *witch* a man is not *gilty* of; you will come out all

rite in that yet; you *neaid* not be on easy about it; i *wod* tell you all if i had chance to."

W. M. KINNEY.

The witness, George William Kinney, commonly known as "Little Bill Kinney," having been shown said paper by the counsel of the prisoner said, that it was a letter he (Little Bill") wrote in the jail at Clarksburg on the 18th of June, 1884, at the request and at the dictation of the prisoner; that said paper thus shown to him was not all the paper he wrote at said time, but was a part of a letter he wrote for the prisoner to one A. E. Wolf, about a charge against him for burning a house; that prisoner told witness what to write, and that he wrote just what Big Bill directed, and that it was directed to A. E. Wolf, whose name had been written on the bottom of the paper, and was there when he gave it to Big Bill, the prisoner; and the witness further stated that the signature to said paper was written by him for Big Bill's signature and at the prisoner's request, and that he then handed it to Big Bill.

The prisoner was then examined as to said paper and testified, that early in April, 1884, the witness, George William Kinney, came past the cell of the prisoner in the jail at Clarksburg, where they were both confined, and put said paper through the bars of prisoner's cell to him without speaking a word; that he the prisoner never spoke to said Wolf, about any prosecution against him, and never had made any accusation or charge of that kind against him, and had no occasion to write to him about any thing, and that said paper as produced at the trial is exactly as it was when handed into his cell by said George William Kinney.

A. E. Wolf also testified, that he never had any occasion to have any conversation with the prisoner or George William Kinney about any matter; and, so far as he knew, the prisoner had never accused him of committing any offence.

George William Kinney further stated, that the name to said paper was not his name, and thereupon the prisoner showed by the signature of said George W. Kinney to three papers, which he admitted to be genuine, that he usually signed his name "William Kinney."

The court refused to permit said paper or its contents to be

read to the jury for any purpose; and to said ruling of the court the prisoner excepted.

The Attorney General with commendable frankness says : "If the court should upon consideration of the testimony of the prisoner and A. E. Wolf and the contents of such paper without further explanation of the intent of the witness in making the writing believe, that such paper-writing contains matter, which could properly be construed as contradicting or tending to contradict the witness in his statement, that Doyle was killed by the prisoner, then the question as to the admissibility of the paper-writing is settled in my judgment by the authorities hereinafter cited, viz : *Gaffney* v. *The People*, 50 N. Y. 416 ; *The Queen's Case*, 2 Brod. and Bing. 284, (6 Eng. C. L. 147); 1 Starkie on Ev. 182 and note ; 2 Phillips on Ev. 433, 437 ; 1 Greenl. Ev., sec. 462 ; 1 Wharton on Ev. secs. 551, 552 ; Wharton's Crim. Ev., sec. 483,"

The authorities are pertinent and to our minds show, that the court erred to the prejudice of the prisoner in excluding the paper. If it referred to the case then on trial, it was the right of the prisoner to have the paper with the accompanying testimony with reference thereto go to the jury to enable them to decide whether it referred to the testimony of " Little Bill" as to the guilt of Big Bill, or whether it was written at the instance of Big Bill and signed for him to be sent to Wolf. The jury were to decide these questions; and if written by Little Bill in reference to his evidence against Big Bill Kinney, it certainly tended to contradict such evidence. It was certainly competent to go to the jury to be weighed by them.

In *Gaffney* v. *The People*, 50 N. Y. 416, the testimony of Curran, a witness, was sought to be contradicted by a written statement made by him. The court said : " In reply to an inquiry whether he did not state that the deceased left the saloon followed by the prisoner," he said, " I do not think I did." He was then asked : " Did you not further state, that a report came to the door shortly after, that some one was hurt ?" and he answered, " I do not believe I did."

The written statement was then shown to the witness, and he was asked if he signed it, and he said, " I do not know ; I made my mark to the statement." The statement was identified by the officer, to whom it was made.

After the prisoner's counsel rested his case, the written statement of Curran was offered in evidence by the prosecution and was objected to by the prisoner's counsel as incompetent; the objection was overruled, and the statement was read in evidence. The court by Andrews judge, said : " It is competent for a party on trial to prove, that a witness on the part of his adversary has made oral statements inconsistent with evidence upon a material question given by such witness on the trial, for the purpose of impeaching the credibility of the witness and breaking the force of the evidence. But it is requisite, that the party offering the impeaching evidence should first call the attention of the witness to the circumstances under which the statements were made, that he may have an opportunity of correcting the evidence given on the trial, or of explaining the apparent inconsistency between his evidence and his former statements. The reason of the rule applies as strongly to written as to oral statements made by the witness; and when his evidence is sought to be impeached by written statements, alleged to have been made by . him, the writing should first be produced, so that he may have an opportunity for inspection or examination. And as the writing is the best evidence of the statement made by the witness thereon, questions as to the contents are not ordinarily admissible.  *  *  In this case the paper was shown to the witness and he had the opportunity for examination. There was no objection to questions asked him as to its contents. The statements made in it were material to contradict the evidence of the witness on his examination in chief; and the objection to it, on the ground of incompetency was properly overruled."

This decision meets our approbation.

The case is more complicated here. The writing was shown to witness, and while he admitted he wrote and signed the paper, he said he wrote it for and at the dictation of Big Bill Kinney and signed Big Bill's name to it, and that it was intended for A. E. Wolf, against whom Little Bill said Big Bill had made a charge of burning a house. Big Bill denied this and said Little Bill handed the paper to him through the bars of the jail without speaking a word. Wolf also testified that he never heard of Big Bill

Kinney making any charge against him.　It was also shown to the jury, that Little Bill Kinney usually signed his name "William Kinney."　The paper is signed W. M. Kinney, and the W. M. may have been intended for an abreviation of "William."

In a case like this it was proper that the paper should be first shown to the witness, that he might make any statement he might choose, as to its execution or the circumstances connected with its execution, and if he as in this case admits he wrote it but claims he wrote it at the dictation of another, and signed that others name to it, whose name was the same as his own except as to one initial letter, it is then competent for other evidence to be introduced with regard to its execution, and if in any view of the case it tends to contradict the evidence of the witness in a material matter, it is competent evidence, if the jury believes it was the written statement of the witness, of which and of the weight it is to have they are the sole judges.　The evidence was improperly rejected, and its rejection may have been to the prejudice of the prisoner.

The judgment and sentence of the circuit court is reversed, the verdict of the jury set aside, and the case remanded for a new trial.

REVERSED.　REMANDED.