KIMBLE et al. v. KISER et al.

No. 3260.

Circuit Court of Appeals, Fourth Circuit.

June 13, 1932.

S. T. Spears, of Elkins, W. Va. (F. E. Tallman, of Elkins, W. Va., on the brief), for appellants.

S. D. Timberlake, Jr., of Charlottesville, Va. (E. L. Maxwell, of Elkins, W. Va., on the brief), for appellees.

Before NORTHCOTT and SOPER, Circuit Judges, and PAUL, District Judge.

PAUL, District Judge.

The appellees instituted this action for damages for breach of a contract involving the sale of certain cattle; the proceeding was by notice of motion for judgment (under the West Virginia statute [Code W. Va. 1931, 56-2-6]), and upon trial a verdict was rendered and judgment entered thereon in favor of the appellees in the sum of $4,964.14. The parties will hereinafter be referred to as plaintiffs and defendants, as they appeared in the trial court.

The notice of motion sets forth in substance: That the plaintiffs (Kiser & Hammer) had on October 21, 1929, entered into a contract in writing with the defendants (Noah Kimble & Son) in the following terms:

"We have this the 21st day of Oct. 1929 bought from Kiser & Hammer 104 herd of short two and yearling heifers at 11¼¢ per lb 40 head to go about July 20, 1930—and the remainder to go from Aug. 15th to Aug. 25th 1930 this being the same lot of cattle contracted from said Kiser & Hammer in June 1929."

That, immediately following the execution of this contract, it was agreed verbally between the parties that if, when the time came to take the heifers away, it should be found that any of them were with calf, then the vendors should substitute other heifers of equal value and quality for those found to be with calf. That, before the time came to deliver the heifers, it was found that 19 of them were with calf, and that the plaintiffs procured and substituted an equal number of animals of the requisite value and quality. That the defendants, however, failed and refused to take up and pay for the heifers at the times mentioned in the contract or at any time thereafter. That the plaintiffs on August 20, 1930, gave notice in writing to the defendants requiring them to pay for and remove the heifers not later than August 25th, and advising them that, if they failed to do so, the animals would be sold on the open market, and the defendants would be held responsible for any loss or damage incurred by such resale. That the defendants failed to take up the cattle or pay for them. That they were resold to the best possible advantage, but at a loss represented by the amount sued for.

To the allegations of the notice of motion, the defendants filed a plea of the general issue, and filed also a special plea in which they admitted the original written contract of sale of October 21, 1929, but denied that there had been any oral modification thereof; and alleged that the cattle offered to be delivered to them in July and August, 1930, were in large part a different lot from the 104 purchased by them; that substitutions in the original lot of cattle had been made without their consent; and that they were not required to accept a lot of cattle, different in part from those originally purchased.

Some confusion as to the real contentions of the defendants arises from the fact that it appears from the evidence as a whole that they contemplated and were insistent on procuring heifers without calf ("clean heifers," as they termed it); so much so that the defendants, who had, in June, 1929, verbally negotiated for the purchase of about 140 heifers, insisted on eliminating a number of them supposed to be with calf, and this reduced the number to the 104, which were the subject of the written contract of October 21, 1929. Yet the defense set up by defendants in their special plea is that they had not agreed that any of the lot of 104 should be eliminated if found to be with calf and had not consented to any substitution being made therefor; and Hugh Kimble,

the only one of defendants who testified, when examined as a witness, stated that he objected to any substitution being made because he wanted the particular heifers that he has bought, and that he "had to take his 104 heifers whether they came with or without calves according to contract."

The plaintiffs, while positive in their statements that there was an oral agreement to make substitution for any animals found to be with calf, also testified that at the times contemplated for delivery of the heifers they had on hand the original 104 and also the 19 which they had purchased to substitute, and were in position to deliver the 104 heifers with or without any substitution as the purchasers preferred. This was denied, at least inferentially, by defendants, who claimed that an inspection of the herd made by them before the date for delivery in a pasture where the entire herd was supposed to be disclosed that only about one-half of the original 104 animals were on hand.

These disputed questions of fact were passed upon by the jury under instructions which, in our opinion, fully and fairly covered the conflicting contentions of the parties. By its verdict the jury must have found: That, after the written contract was made, a verbal agreement was entered into for the substitution of new animals for any found to be with calf; that the plaintiffs were ready and willing to deliver the cattle called for in the contract, with the substitutions permitted under the oral agreement, on the dates provided for their delivery; that the plaintiffs made no substitutions in the original lot except as to the heifers found to be with calf. In our opinion, the evidence justifies the findings of the jury, and it follows that the lower court did not err in refusing to set the verdict aside and in entering judgment upon it.

■ It is earnestly argued for defendants that, even if an oral agreement were made for substitutions to replace heifers with calf, it related to heifers exposed to the bull prior to the date of the contract and whose condition had not at that time become apparent; that it is clear that the heifers were exposed after the date of the contract, and thereby plaintiffs violated the contract.

It seems sufficient to say that this theory of the case was not presented at the trial; that no instructions were asked submitting such a contention to the jury, and there was no sufficient evidence that the agreement as to substitutions referred only to heifers exposed prior to the date of the contract to en-

able the court to say conclusively that it did so refer.

Other assignments of error relate to the admission and exclusion of evidence and to the giving of certain instructions and refusal of others tendered.

■■ In the course of the trial, D. W. Kiser was asked upon cross-examination if it were not true that, in a suit brought in the state court involving this same transaction, he had signed and sworn to a notice of motion which based the right of recovery upon the written contract alone and made no mention of any verbal modification of that contract. The court sustained an objection to the question, apparently upon the ground that a litigant could not be discredited by the contents of a pleading prepared by his counsel and signed by the litigant at counsel's direction. While the fact that the notice was signed under such circumstances might affect the weight to be given to any apparent contradiction contained in it, it would, we think, be unsound to hold that litigants are never to be held to account or questioned as to allegations contained in pleadings simply because they have been prepared by their attorneys. While the question, no matter how answered, was of little value in determining the facts of the case, there was nevertheless a sound reason why the question should not have been answered. The weight of authority is to the effect that a witness cannot be asked as to the contents of a paper written or executed by him unless the writing is first produced and submitted to him for his affirmance or denial of its authenticity; and the paper itself should then be introduced as the best evidence of its contents. Jones on Evidence (2d Ed.) § 847; State v. Kinney, 26 W. Va. 141; The Charles Morgan, 115 U. S. page 77, 5 S. Ct. 1172, 29 L. Ed. 316.

■ The third assignment of error insisted on by appellants relates to an instruction tendered by them as follows: "The Court instructs the jury that when the parties have made a written agreement, the writing is regarded as the exclusive evidence of the contract, and all oral negotiations and stipulations preceding *and accompanying* the execution of the written agreement are merged in it, and are not admissible in evidence, and all such oral negotiations and stipulations should not be considered by you to contradict or vary the written agreement dated October 21, 1929, offered in evidence in this case."

The court struck out the words "and accompanying" (italicized above), and gave the instruction as so modified; and this modifica-

tion is assigned as error. The only question which arose as to any oral modification of the contract related to the right to make substitutions in the herd of 104 heifers which were the subject of the written contract. The defendants denied that there was any such oral agreement at any time, while the evidence of the plaintiff was clear that it was made after the written contract was executed. There would seem, therefore, to be no applicability for an instruction predicated on the supposition that the oral understanding had "preceded or accompanied" the execution of the written contract; there being no evidence to this effect. We think the court would have been justified in refusing the instruction either as tendered or as modified. Other instructions had made it clear that any verbal agreement relied on must have been after the written contract was executed.

Previous to the time when the court gave its charge to the jury, the defendants had tendered their instruction No. 8, which the court, after making several proper but not important modifications therein, offered to give. The record recites that the defendants "did not accept the giving of said instruction as modified; that after the Court had given its charge to the jury, while the jury was still in the box, the defendants requested the Court to give Instruction No. 8 as modified and the Court declined to then give the instruction." The contention of the defendants is that, although they had once rejected the offer to give the modified instruction, they were not barred from asking it later, and that the court should have given it so long as the case had not gone to the jury.

It seems to be the sound rule that instructions when proper, applicable to the case, and not previously given or covered in other instructions, should be given when requested at any time before the retirement of the jury, 14 R. C. L. 803; State v. Catlin, 3 Vt. 530, 23 Am. Dec. 230; and see State v. Cobbs, 40 W. Va. 718, 22 S. E. 310.

But it remains to be seen whether the instruction was a proper one, and whether its refusal was prejudicial to defendants. As modified by the court and last tendered, it was as follows: "The Court instructs the jury that if they believe from the evidence that defendant, Kimble, on the 19th day of August, 1930, went to the pasture field where the 104 heifers that he had previously purchased were supposed to be, and where they were when he purchased the same, that he then and there inquired of plaintiff, Kiser about the heifers that he was to take up at or about that time; that said Kiser informed Kimble

that about 100 of the heifers were then and there in the field; that Kimble went to see and inspect the cattle referred to by Kiser and did see and inspect them; that a large proportion of the 104 heifers previously purchased by said Kimble were not found by Kimble; that Kimble then and there notified Kiser that he found, saw and inspected 96 or 97 cattle then and there found in said field and that only about one-half of the 104 cattle he had purchased were there and that Kimble then and there notified Kiser that he would not take the cattle referred to by him (Kiser) and which he (Kimble) had seen, and inspected, then the jury are instructed that it was not incumbent upon defendant to give plaintiff any further notice concerning said cattle or to specify any day for taking up said heifers."

The substantial effect of this instruction is to say that, if the defendant, before the date for delivery of the cattle, had reason to believe from statements made by the plaintiffs that the plaintiffs were going to deliver a bunch of cattle substantially different from those purchased, and in such belief notified the plaintiffs that such cattle would not be accepted, then the defendants were relieved of any obligation as to giving any further notice about the cattle, or for fixing a date upon which they would call for delivery of the cattle. This instruction was evidently tendered to meet another previously given by the court to the effect that it was the duty of the defendants to call for the cattle on some date of which the plaintiffs had been previously notified, and, until they had made such call and given the plaintiffs opportunity to produce the cattle called for by the contract, they had no right to assume that the plaintiffs could not or would not produce them. We are of the opinion that the instruction given was proper, and that it would have been error to have given defendants' instruction No. 8. The jury would have been led to believe from it that the defendants were relieved from performing the contract, if they had reasonable grounds to believe from the occurrences on the 19th of August that the plaintiffs intended to deliver cattle not covered by the contract. The instruction was wrong for one reason, in that it assumed a fact in controversy, namely, that there was no oral agreement and that the defendants were entitled to delivery of the precise 104 cattle mentioned in the written contract.

Moreover, the instruction entirely ignored the events which followed the 19th of August. It is to be remembered that following that date, when defendants claim to have giv-

en the verbal notice that they would not take the cattle, the plaintiffs served on them a written notice that the plaintiffs would be ready to deliver the heifers specified in the contract on August 25th. In the face of this notice, the defendants were certainly not justified in refusing to appear and to accept the cattle if they were, in fact, ready for delivery. Nothing that they had done could legally absolve them from performing their contract if the plaintiffs were ready to perform. And not only did plaintiffs give notice on August 20th that they were ready to perform, but they testified that they had the specified cattle on hand on August 25th ready to be delivered. Yet defendants' instruction No. 8 might easily be construed by the jury to mean that there was no duty on the defendants to appear and accept the cattle. So construed, it would be erroneous; and, construed in any other way, it would have no pertinency to the essential matters at issue in the case. We think the instruction rightly refused, and, while the record does not disclose the reason for its refusal, it is probable that the action of the presiding judge was based upon a reconsideration of the merits of the instruction rather than upon the fact that it was belatedly offered.

The only other assignment of error stressed by the appellants relates to an instruction given to the effect that, if the jury did not believe that the written contract had been modified to permit the substitution of other heifers for those with calf, they must nevertheless find for the plaintiffs if they believed that the plaintiffs had and were ready to deliver at the time fixed for delivery the original lot of 104 heifers, even though 19 of this original lot were with calf at the time delivery was to be made.

This instruction was justified and was called for by the testimony of the defendant, H. A. Kimble, who testified that he objected to any substitutions in the herd of 104 heifers which he had bought, and that he preferred his own heifers just as they were, the 104 that the contract called for; and that he had to take 104 heifers whether they came with or without calves, according to contract. On the other hand, D. W. Kiser, one of the plaintiffs, testified that, when the first date for delivery arrived, the plaintiffs had on hand the original 104 heifers and also the 19 which they had purchased to substitute, and were prepared to and would have delivered the 104 animals with or without substitutions as defendants might have preferred. In view of this evidence, the instruction objected to was justified and proper.

Several other assignments of error appear in the record, but are not insisted on by appellants. They are of a formal nature or are covered in the discussion heretofore made, and need no particular consideration.

We find no error, and the judgment of the lower court is affirmed.