**DEUTSER et al. v. MARLBORO SHIRT CO., Inc.**

No. 3975.

Circuit Court of Appeals, Fourth Circuit.

Jan. 6, 1936.

Lewis Fogle, of Houston, Tex., and J. Kemp Bartlett, of Baltimore, Md., for appellants.

Simon E. Sobeloff and Roszel C. Thomsen, both of Baltimore, Md. (Wm. Taft Feldman, of Baltimore, Md., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from a decree entered in two interpleader suits which were consolidated for hearing in the court below. 13 F.Supp. 313. In these suits, two insurance companies paid into court the amount of policies, approximating $14,000, which they had issued on the life of one Herman Deutser, deceased, and impleaded as defendants the Marlboro Shirt Company, which held an assignment of the policies to secure a promissory note of $4,540.25, and the beneficiaries named in the policies, who were contending that the assignment to the shirt company was void on account of fraud in the procurement and failure of consideration. The beneficiaries under the policies alleged, by way of answer to the bills of interpleader and cross-bill against the shirt company, that the assignment of the policies relied on and the note which it was executed to secure were obtained from the insured by the shirt company in payment for a bill of merchandise, which that company sold and promised to deliver to

insured, but which it fraudulently intended not to deliver at the time of making the sale, and that, if there was any intention on the part of the shirt company to deliver the merchandise thus sold, there was a failure of consideration in that it was never in fact delivered. The shirt company's answer alleged that the note and the assignment of policies securing same were executed by insured to make good his guaranty of an indebtedness of the White House, Inc., a bankrupt mercantile corporation of Houston, Tex., the stock of which had been owned by insured and members of his family, and for which he had acted as buyer when the indebtedness guaranteed was contracted.

The District Judge found that there was no fraud in the procurement of the note and assignment, and sustained the latter as a charge against the funds paid into court, to the amount of the note, less dividends which the shirt company had received on its claim against the bankrupt; · and from this decree the beneficiaries under the policies have appealed. Their appeal presents three questions: (1) Was there error in the holding of the District Judge that the note and assignment in question were not obtained by the fraud of the shirt company? (2) Did the District Judge err in admitting parol evidence to show the real consideration for the note and assignment, in view of the fact that such parol evidence contradicted the written instrument and related to a promise to pay the debt of another person? (3) Should the shirt company have been required to credit on the note secured by the assignment of the policies a sum of $2,279.45 paid that company by a credit insurance company, on account of losses which it had sustained on a number of accounts, among which was included the account of the bankrupt corporation? We think that all of these questions should be answered in the negative.

The policies were transferred by the insured to the shirt company on June 19, 1933, in an assignment which recited simply that it was made "for value received"; but at the same time insured executed and delivered to the shirt company his negotiable promissory note in the sum of $4,540.25, which was within 15 cents of the exact amount of the indebtedness due the shirt company by White House, Inc., the bankrupt corporation to which we have referred. A contract was executed between insured and the shirt company bearing the same date, in which it was agreed that the shirt company should be named as beneficiary under the policies as soon as a change in beneficiary could be accomplished, but that, when the amount due the shirt company should have been paid, the assignment should be returned to insured. The contract contained the following provision as to consideration:

"That party of the first part, in consideration of a bill of merchandise purchased on the above date from the party · of the second part, as further evidenced by a demand promissory note for the said amount of such invoice in the amount of $4,540.25, *and the receipt of the merchandise is hereby acknowledged,* party of the first part, as further guarantee for the payment of such invoice, has this day executed in the favor of the party of the second part a deed of assignment for all his equity in life insurance policies as listed in said deed of assignment." (Italics ours.)

On the same date, the shirt company caused an invoice covering 505¾ dozen shirts to be filled out and filed among its papers showing a sale of that number of shirts to insured; but it is admitted that no shirts covered by the invoice were in fact shipped to him, and it. was conclusively established that the invoice was so unusual in character as to preclude the idea that shipment thereunder could have been intended by any one. On the same date, insured delivered to the shirt company a written acknowledgment of receipt by him of the merchandise covered by the invoice.

It is admitted that no merchandise was actually delivered to the insured as consideration for the execution of the note and assignment of policies. The shirt company established by a number of witnesses, however, that no delivery was ever actually intended; that the note and assignment were given to secure the amount due by the bankrupt, White House, Inc., the account of which had been guaranteed by insured; and that the device of issuing an invoice for merchandise and taking a receipt as upon delivery was a pure fiction suggested by the insured, who contended that some such showing of present consideration was necessary under the law of Texas to sustain the note and assignment. It was shown that insured

was planning to open a new store in Houston; that he secured the co-operation of the shirt company in obtaining the lease of a desirable building for that purpose; that, in connection with securing this co-operation and the promise of the shirt company to let him handle its line of goods, he promised that he would execute a note and assign policies of life insurance to make good the account of the White House, Inc., which he had previously guaranteed; that he came by St. Louis and obtained forms for the assignment of the insurance policies, in the meantime sending the shirt company a message that he was on the way to Baltimore to carry out his promise; and that he did come to Baltimore and execute the note and assignment for the purpose of securing the debt of the bankrupt, suggesting himself the fictitious invoice and receipt as a consideration. It was shown by a number of witnesses that he did not purchase at that time any goods for the store which he was to open, intending to return later for the purpose of making such purchases, but did purchase a bill of approximately $400 for another store in which he and his brother were interested, and that he then went from Baltimore to New York and thence to Yantic, Conn., where he remained for several days before returning to Houston.

It was further shown that, when insured returned to Houston, he suffered a mental and nervous collapse and was placed in a sanitarium; that one of his brothers immediately wired the shirt company that in the opinion of the doctors he would not be able to go ahead with his plans for opening stores for several months and asked that his orders be held pending further developments; and that the shirt company replied, expressing regret at insured's illness, but advising that he had not at that time placed any orders with it in his own behalf. Following this, insured's brothers attempted to induce the shirt company to release the policies which had been assigned to it, but without result. In none of the correspondence or negotiations with regard to this, however, is there any suggestion that insured had been defrauded or advantage taken of him by the shirt company; and it is significant that, when on August 18th insured committed suicide, his brother, with every appearance of friendliness, wired the officer of the shirt company with whom he had been dealing advising of his death and of the time appointed for the funeral.

The learned judge below went to the real point in the case and well summarized the evidence bearing thereon in the following language:

"The plaintiffs' case of fraud hinges on establishing the intention of Marlboro not to perform. Otherwise plaintiffs would have only an action at law for damages for breach of contract, a right which they have never claimed. The evidence which supports defendant's contention may be summarized as follows: (1) The similarity between the figures in the purported contract of June 19th and the amount of the old debt; (2) the anomalous or prima facie fictitious character of the voucher supporting the figures in the purported contract; (3) the oral testimony of the officials of the defendant company that they, as well as Deutser, intended, when the writings were being prepared and signed, that they were to cover the old indebtedness; (4) oral testimony by officers of defendant company denying that any demand was made by Deutser upon the plaintiffs for delivery of the shirts stated as consideration in the agreement of June 19th, thus further corroborating the inference that neither party to the agreement ever intended the shirts to be delivered; plaintiffs produced no credible evidence to show that there was such a demand; (5) the statement in the letter of the insured of May 20, 1933, that his new store would not be ready until September and that he would prefer to start with fall merchandise; (6) the acknowledgment in the agreement of June 19, 1933, and by separate document bearing the same date, of the receipt of the stated consideration; and (7) the predisposition of the deceased to resort to fictions, as evidenced by his telegram to Mr. Rosenbloom, secretary and treasurer of defendant company, requesting assistance in 'bluffing' the rental agent in Houston in order to obtain reduced rental of his new store."

There is nothing in contradiction of the evidence offered by the shirt company as to the nature of the transaction in which the assignment was given, except the testimony of one Alex Deutser, a brother of insured interested as a beneficiary under certain of the policies, as to a conversation with insured after his return from Baltimore and New York.

which was admitted in evidence over the objection of the shirt company and which was clearly inadmissible. Even if we were at liberty to consider it, we do not think it of such a character as to overcome the testimony offered by the shirt company. According to Alex Deutser, insured told him that after going to New York he returned to Baltimore and was there told by an official of the shirt company that he had placed a large order and would be required to furnish a statement as a basis of credit; that he replied that he had left securities to cover the order, but the official of the company stated that these were to take care of the old account; and that, after pleading with the official, he finally realized that he was "licked" and came on home. This testimony of Alex Deutser, given at the second hearing below, was entirely inconsistent with the testimony of his brother given on the first hearing six months before to the effect that after his return insured was unable to talk about what happened in Baltimore. It is not consistent with the telegram sent to the shirt company directing that goods be not shipped under insured's orders, or with the telegram advising as to insured's death and the arrangements for his funeral. And, if it is to be taken as true, we cannot understand why the brothers of insured, in attempting to obtain the return of the policies, should have failed to allude to the fraud which they claim had been practiced upon him.

If the question of fraud were before us to be heard de novo, we do not see how we could decide it otherwise than did the judge below on the record as presented. We are not hearing the question de novo, however, but upon appeal; and, in such case, the rule is well settled that. we will not disturb the findings of the District Judge, who saw and heard the witnesses, unless satisfied that they are clearly wrong. Wolf Mineral Process Corporation v. Minerals Separation North American Corporation (C.C.A.4th) 18 F.(2d) 483; Virginia Shipbuilding Corporation v. United States (C.C.A.4th) 22 F.(2d) 38; Suburban Improvement Co. v. Scott Lumber Co. (C.C.A.4th) 67 F.(2d) 335, 90 A.L.R. 330; Miller v. Pyrites Co. (C.C.A.4th) 71 F.(2d) 804; Sherman v. Bramham (C.C.A.4th) 78 F.(2d) 443. Under this rule there can be no question but that the finding that there was no fraud must be affirmed.

Coming to the second point, the contention of appellants is that all of the instruments executed on June 19th should be construed together as one instrument; that, when they are so construed, the consideration for the execution of the notes and the assignment of the insurance policies is shown to be the sale of a bill of merchandise; that testimony showing any other or different consideration should be excluded; and that, when such testimony is excluded from consideration, we have a transfer of policies made in consideration of a sale of goods which were never delivered and which there was no intention to deliver. One answer to this position would be that the consideration shown upon the face of the papers was not the sale of a bill of goods to be delivered in futuro, but the sale of goods which had already been delivered and of which receipt was acknowledged; and, if parol evidence were excluded as to the real consideration for the note and assignment, nothing would appear upon which appellants would be entitled to relief on any theory of the case. But the real answer is that the recitals of a written instrument as to the consideration received are not conclusive, and it is always competent to inquire into the consideration and show by parol or other extrinsic evidence what the real consideration was. Cabrera v. American Colonial Bank, 214 U.S. 224, 29 S.Ct. 623, 53 L.Ed. 974; Hitz v. National Metropolitan Bank, 111 U.S. 722, 4 S.Ct. 613, 28 L.Ed. 577; Jenkins v. Pye, 12 Pet. 241, 251, 9 L.Ed. 1070; General Paint Corporation v. Kramer (C.C.A.10th) 68 F.(2d) 40, 42; Wiley v. Dixie Oil Co. (C.C.A.10th) 43 F.(2d) 51, 52; Fidelity & Deposit Co. v. Wheeler (C.C.A.8th) 34 F.(2d) 892, 893, 895; O'Connor v. Shapiro, 56 App.D.C. 351, 13 F.(2d) 957, 959; Riddle v. Hudgins (C.C.A.8th) 58 F. 490, 493; Keene v. Ætna Life Ins. Co. (D.C.) 213 F. 893; Koogle v. Cline, 110 Md. 587, 73 A. 672, 24 L.R.A.(N.S.) 413; 22 C.J. 1157, 1167; 10 R.C.L. 1042. And see note in 25 L.R.A.(N.S.) 1194.

Certainly when the recital as to receipt of consideration is attacked by parol by one of the parties to the instrument, or those claiming under him, for the purpose of showing fraud or failure of consideration, there can be no question as to

The right of the opposite party to show by parol the real nature of the consideration received. Koogle v. Cline, supra, and note at pages 413-415 of 24 L.R.A.(N.S.); Columbia Nat. Bank v. Baldwin, 64 Neb. 732, 90 N.W. 890; Silvers v. Potter, 48 N.J.Eq. 539, 22 A. 584; Welch v. Brown, 46 Colo. 129, 103 P. 296.

The contention that the consideration expressed in the instruments is executory or contractual cannot be sustained. There is no promise that the shirt company will deliver merchandise in consideration of the execution of the note and assignment, but a recital that merchandise has been delivered and a receipt acknowledging its delivery.

And there is likewise nothing in the contention that the parol evidence should be excluded under the statute of frauds as tending to establish a promise to answer for the debt of another. The writing necessary to satisfy that statute was contained in the promissory note, which was the instrument in which payment of the debt of the bankrupt corporation was promised. That the consideration of the promise was not truly expressed therein did not render the promise void under the statute, but it was proper to show such true consideration by parol. 25 R.C.L. 664; 27 C.J. 385. Recovery by the shirt company was upon the promissory note and the written assignment securing same, not upon the parol guaranty by insured of the debt of the bankrupt. Evidence of that was admitted for the purpose of showing the true consideration of the written promise, not as a basis of recovery in itself.

As to the third question, it should be observed that the contention of appellants that the shirt company should be required to credit on the note of the insured the sum of $2,279.45 received by it from a credit insurance company was not raised in the pleadings and was not passed upon by the court below. It is well settled that only in very exceptional cases can a point not brought to the attention of the court below and not passed upon by that court be raised upon appeal. Blair v. Oesterlein Mach. Co., 275 U.S. 220, 225, 48 S.Ct. 87, 72 L.Ed. 249; Duignan v. United States, 274 U.S. 195, 200, 47 S.Ct. 566, 71 L.Ed. 996; Fruit Growers' Express Co. v. Plate Ice Co. (C.C.A.4th) 59 F.(2d) 605, 610; Kimble

v. Kiser (C.C.A.4th) 59 F.(2d) 626, 627; H. E. Wolfe Const. Co. v. Fersner (C.C.A.4th) 58 F.(2d) 27. But, irrespective of this, we think that the contention is without merit. If, by failing to disclose that it had obtained security on one of the claims put forward for the collection of credit indemnity insurance, the shirt company succeeded in collecting more than was justly due under the policy, this was a matter for complaint by the credit insurance company, not by the person who had given the security. The guaranty of the account of the bankrupt and the security given for the payment of that account might possibly inure to the benefit of the credit insurance company; but we know of no principle of law or of equity upon which payments made by the credit insurance company could be held to inure to the benefit of the person who had given the security.

For the reasons stated, the decree appealed from will be affirmed.

Affirmed.