## HITZ v. NATIONAL METROPOLITAN BANK.

APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Argued March 14th and 17th, 1884.—Decided May 5th, 1884.

*Deed—Fraud—Husband and Wife—Judgment Lien—Tenancy by Curtesy.*

In the absence of a fraud a husband who is embarrassed may convey his curtesy in the real estate of his wife to trustees for her benefit and for the benefit of their children, when a consideration is received for it which a Court of Equity may fairly take to be a valuable one.

When a deed in trust recites a nominal consideration as the sum paid by the trustee, it is no contradiction to show that a valuable consideration passed to the grantor from the *cestui que trust.*

A statute enacting that the property of a married woman shall not be liable for the debts of her husband exempts his estate in the curtesy in her real estate from being taken for his debts contracted after the passage of the act.

Under the recording act which took effect in the District of Columbia, April 29th, 1878, an unrecorded conveyance is subject to the lien of a judgment recovered subsequent to it, although execution was not issued and levied till after the record, unless it appears that the judgment debtor had notice of its existence before issue and levy of execution.

This was a suit in equity brought by a judgment creditor, to set aside a conveyance of real estate in Washington belonging to his wife, to trustees for the benefit of the wife and their children. The facts which made the issues appear in the opinion of the court. On the 31st of March, 1884, the court announced a decision in appellant's favor. Appellee's counsel then filed a petition for a rehearing as to the effect of the recording law of April 29th, 1878, upon the judgment and the deed. This act is set out in the opinion. The deed in question was executed and delivered before recovery of the judgment. It was recorded after the recovery, but before issue and levy of execution. The judgment creditor had no knowledge of the deed so far as shown by the record.

*Mr. Enoch Totten* and *Mr. R. D. Mu   y* for appellant.

*Mr. Leigh Robinson* for appellee.

Mr. Justice Miller delivered the opinion of the court.

This is a bill in chancery brought by the Bank against John Hitz, Jane C. Hitz, his wife, and Metzerott and Cross, trustees, to declare void a deed, so far as it affects rights of the bank, made by Hitz and wife to Metzerott and Cross, as trustees, for the benefit of the wife.

The deed was made December 9th, 1878, and filed for record in the proper office, May 13th, 1879. The property conveyed, which was real estate in the city of Washington, came to Mrs. Hitz by inheritance from her father, and by the birth of children before the married woman's act of Congress of April 10th,

1869, 16 Stat. 45. Hitz had become entitled to a life estate in it as tenant by the curtesy.

It is this right which is the subject of the present controversy.

The bank, as creditor of Hitz, obtained a judgment against him on the 28th day of April, 1879, for the sum of $10,000, with interest and costs, and on the 5th day of June a writ of execution was issued on said judgment and returned *nulla bona* the same day.

On the next day plaintiff caused another execution to be issued on the same judgment, and levied by the marshal on the interest of the said John Hitz in the property described in the trust deed of Hitz and wife to Metzerott and Cross.

We will notice the grounds on which the validity of the deed is assailed, in their order.

1. It is said that the deed was never delivered to the trustees.

But the testimony of Mr. Metzerott, complainant's witness, shows clearly that he did receive the deed and kept it for an indefinite length of time, and then placed it in a box which he bought for that purpose, and handed it to Mrs. Hitz, that she might deposit the box with this and other valuable papers in the Bank of the Metropolis. This was done.

It is also objected that it was delivered to Metzerott as an escrow, to be *recorded*, as he expresses it, only when Hitz should have made some adjustment of his indebtedness to the German-American Bank, which has never been done. It is quite obvious, and perhaps natural, that Metzerott should confound his holding the deed as an escrow and withholding it from record as meaning the same thing; and it is very clear from all his testimony and that of Mr. Cross, the other trustee, that only the latter was in question.

Both of these gentlemen had been consulted before the deed was made, and had consented to act as trustees in it. As soon as the deed was executed and acknowledged, it was placed in the hands of Metzerott, who received and held it for some time, and then gave it to the party chiefly interested for safe-keeping. Leaving out the testimony of Mrs. Hitz, of Hitz, and their sworn answers, in which they both deny that they

had ever heard of the deed being delivered as an escrow, it is plain that it was executed, delivered, and the trusteeship accepted, and the deed thus became a valid instrument as between the parties to it.

2. As regards the understanding that it was not to be recorded until Hitz's debt to the bank was adjusted, it rests upon Mr. Metzerott's testimony alone. Mrs. Hitz swears that though she was advised by Mr. Cox, her lawyer, who drew up the deed, that it was better not to record it at once, and that Mr. Metzerott expressed the same views to her, she did not adopt them, and made no promise to withhold it from record. Hitz, whose interest in the property was the thing conveyed, says that he had no such understanding, and Cross, the other trustee, knows nothing of it except what was told him by Metzerott.

There can be no reason favorable to the purpose of the deed, the interests of Mrs. Hitz, the *cestui que trust*, why it should be withheld from record, or why she should have made such a promise.

3. This brings us to the third objection to the deed, namely, that it was voluntary, was without consideration, and designed to defraud creditors.

It appears that up to a very short time before this deed was made Mr. Hitz had the entire management of his wife's affairs, and she had trusted him unreservedly. It was a complete surprise to her when she learned that with the failure of the bank, of which her husband was president and principal manager, her own fortune, inherited from her father, had also disappeared. The evidence leaves no doubt that she at once took the management of her affairs out of his hands, not even permitting him to receive or collect for her the rents of what remained, of which the property now in suit was the main part.

It appears that, to save himself from prosecution by the bank, or for other reasons, he desired to convey to the bank some real estate, the title of which was in his own name, though it had been purchased partly by her money. He wished her to join him in conveyance of this property to Keyser, the receiver, who had been appointed to close up the

affairs of the bank.   He had also conveyed to Hatch and wife, for some purpose of his own,· a valuable ،business house on Pennsylvania Avenue, which 'was part of 'her inheritance, and then had procured these persons to mortgage it to the bank of which he was president, to secure a large debt due by· him ،to the bank. . But it had been discovered that Mrs. Hitz had never signed or otherwise executed any conveyance of this lot. Mr. Hitz was in an embarrassing condition with regard to this matter.'   It was after some resistance on her part to making these matters straight for Mr. Hitz, that it was agreed if he would make the deed of trust by which all the estate in the lots mentioned in it, including his interest, whatever it might be, and hers also, should be secured to Mrs. Hitz and her children by the intervention of trustees, she would make good the title of the lot on Pennsylvania Avenue which he had pledged to the bank, and would join him also in the deed to Keyser, the receiver, of what was asserted to be his property.      '

The trust deed was, therefore, made on a valuable consideration.   The value of the avenue property alone conveyed by Mrs. Hitz is sworn to be $18,000.   What her interest in the other property was worth is not proved. and could not easily be ascertained.   No estimate of the value of Hitz's interest in the lots conveyed to the trustees is shown. ، When sitting as a Court of Equity we see this man trying. to rectify the wrong done his wife ; we are not required to scan closely the value of what she gave ·at the moment for his relinquishment of his marital rights in her remaining property.

The case is wholly free from fraud.   Mrs. Hitz had the same right to buy his curtesy in her real estate, to have it barred by a proper conveyance, as any one else had or could have had. Her equity was as good as that of any other creditor, and he could secure her as well as he could the bank.   As the present complainant had no lien on the property, the joint right of husband and wife to sell it for value was undoubted, and the right to sell·to her by the intervention of trustees is equally clear.   The property she gave in .exchange for his interest in her lots did not·go to him to be secretly used in fraud of his creditors, but was conveyed directly to creditors in satisfac-

tion of his debts. The conveyance was not without consideration and it was without fraud.

We do not concur in the view of the learned court below, that because the sum of one dollar is mentioned in this trust deed as the consideration, the true consideration cannot be shown by parol evidence. It is always understood that the one dollar in such connection is merely nominal and is never actually paid. In this case it means no more than that nothing was paid by the trustees, who took no beneficial interest.

It neither contradicts nor varies this statement to show that a valuable consideration passed from Mrs. Hitz to her husband for his conveyance of his life estate to the trustees for her benefit.

The question is unimportant in this case, because the bill of complaint calls upon the defendants to show under oath the true consideration of the deed in the following language:

"That defendants by their answers under oath may disclose what was the real and true consideration and purpose for the making of said deed."

That the answer thus called for, showing a valuable and meritorious consideration, which answer is uncontradicted by any evidence whatever, and is well supported on cross-examination of defendants in their depositions, can be disregarded as inadmissible because unfavorable to the party who demanded it, would be to permit the party to trifle with the powers of the court at its pleasure.

4. There remains to be considered the effect to be given to the fact that complainant recovered its judgment against Hitz before this deed was recorded, but issued no execution until after it had been filed according to law with the proper officer for record.

On this question a petition for a rehearing points out a mistake in the opinion of the court as originally delivered in regard to the date of the act repealing the recording statutes as found in sections 446 and 447 of the Revised Statutes, whereby we were misled to believe that the sections mentioned governed

the case.  It is apparent, however, that the new statute was
approved April 29th, 1878, and not 1879, and its provision as to
the effect of recording or failing to record the instrument in
question, which was executed in December, 1878, must be gov-
erned by that act.   It is in the following language :

" That all deeds, deeds of trust, mortgages, conveyances, cov-
enants, agreements, decrees, instruments in writing, which by law
are entitled to be recorded in the office of the recorder of deeds,
shall take effect and be valid, as to creditors and subsequent pur-
chasers for valuable consideration without notice, from the time
such deed, deed of trust, mortgage, conveyance, covenant, agree-
ment, or instrument in writing shall, after having been acknowl-
edged, proved, or certified, as the case may be, be delivered to the
recorder of deeds for record, and from that time only."   20 Stat.
39, 40.

As the deed of trust in question was not recorded until sev-
eral weeks after the judgment of the bank against Hitz was
recovered, and as there is no evidence that the bank ever had
actual notice of its existence until after execution was issued
and levied on Hitz's interest in the property, we entertain no
doubt but that the conveyance would be ineffectual against the
bank, or any purchaser at the sale under that judgment.

But as this deed interposed no obstruction to the sale, and
none to the title of a purchaser, it is not easy to see on what
ground the interposition of a court of equity is sought, since
the bank having levied on Hitz's interest in the property, which
was a legal estate if it was anything, it could be sold under
that execution, if liable to sale for his debts, without the aid of
a court of equity, the whole proceeding being one at law, and
its effect, when completed, a mere question of statutory con-
struction.

It may be, however, that the bank had a right to remove the
apparent cloud which this deed would throw upon the title of
the purchaser at the sale, and this demands of us an examina-
tion of the argument advanced at the hearing, that this inter-
est of Hitz in the property of his wife was not liable to sale for

his debts, by reason of section 727 of the Revised Statutes for the District of Columbia, which is as follows:

"In the District the right of any married woman to any property, personal or real, belonging to her at the time of marriage, or acquired during marriage in any other way than by gift or conveyance from her husband, shall be as absolute as if she were unmarried, and shall not be subject to the disposal of her husband, nor be liable for his debts."

There can be no question that this statute exempts the wife's property from the control of her husband and liability for his debts as to all property coming to her from any source but him, after its enactment.

This was on the 10th of April, 1869, and it is insisted that the right of Hitz, as tenant by the curtesy, had then become vested, because the inheritance had then come to Mrs. Hitz, the marriage had taken place, and issue had been born of it.

It is argued with much force that Congress did not intend by this statute to destroy an existing vested right of the husband under such circumstances, and that if it did so intend it had not the power to do so.

We should be slow, however, to impute any such purpose to Congress unless the language in which its statutes are framed demands it. The question does not arise in the case before us.

Three distinct departures from the old law are announced in this new statute in regard to the husband's relation to his wife's property, both real and personal.

1. That her right to it shall be as absolute as if she were unmarried.

3. That it shall not be subject to the disposal of her husband.

3. That it shall not be liable for his debts.

In regard to the first of these, it may be conceded that where, at the time of the enactment of this law, the husband had acquired a vested right in the property, Congress did not mean to destroy it, and that to that extent her right would not be as absolute as if she were unmarried.

It would result from this that, as between Mrs. Hitz and her husband, his right by the curtesy would remain.

It is not necessary to decide in this case whether he could, in view of the second clause of the statute, transfer that right to another by sale or otherwise. If he retained the right to its possession and its use, so long as he lived, even after her death, it seems reasonable that a statute which limited his power over it to that use and possession would not be liable to the charge of destroying a vested right.

In regard to the third clause, that it shall not be liable for his debts, the argument is still stronger, for that divests him of no right and does him no injury. What effect it might have as against an existing creditor at the time the law was passed, as impairing the obligation of a contract, we need not decide, for it does not appear that there are now any such creditors, and it appears affirmatively that the debt of the bank in this case was created nearly ten years after Congress declared that her property should not be liable for his debts.

In regard to this clause of the statute and to its operation in this case, it is neither retrospective nor does it impair the obligation of a contract.

It is urged, however, that the plain purpose of the statute was to deprive the husband of all legal interest in the property of the wife, and it must, therefore, be construed to relate only to property acquired after the passage of the law. For this purpose, however, the first clause of the declaration, namely, that her right to such property "shall be as absolute as if she were unmarried," is amply sufficient. And if that was all that was intended the two subsequent clauses were unnecessary and tended to weaken that declaration. These latter clauses, however, and especially the last, may be applied to cases where the other would not, namely, to cases of marriage already in existence and where the husband's marital rights had attached. In this class of cases the enactment that her property should not be liable for his debts, because he held some right of present control, was in accord with the spirit of the main principle of the statute, and as applied to debts thereafter created, it did no one injustice.

It is also argued that the property exempted from his debts by the act is her property, and that the life estate of the husband is not her property.

But this is a very narrow view and is not justified by any fair grammatical construction of the language employed.

It is the right of a married woman to any property, personal or real, belonging to her at the time of marriage, or acquired during marriage, which shall be as absolute as if she were unmarried, and shall not be subject to the disposal of her husband. It was the purpose of the statute to abolish this tenancy by the curtesy, or any other interest of the husband, in *all her* property, and to place her in regard to it in the condition of a *feme sole.* And it was this same property, and not part of it, no separate interest or estate in it, which was exempted from liability for his debts. It would be a queer construction of the statute, looking at its manifest purpose, to hold that it meant, though her property shall never come under his control and he shall acquire no interest in it, and it shall never be liable for his debts, the use and possession, the rents and profits of it, may be made liable for his debts as long as he lives.

We are of opinion that the statute intended to exempt all property, which came to the wife by any other mode than through the husband, from liability to seizure for his debts, without regard to the nature or the interest which the husband may have in it, or the time when it accrued, and that in regard to such debts, created after the passage of the law, no principle of law or morals is violated by the enactment. On the contrary, if we concede, as in the present case, that the husband had acquired a tenancy by the curtesy, in her property, before such enactment, it is eminently wise and just that no other person should afterwards acquire such an interest in it as to disturb the joint possession of it, and turn the family resulting from the marriage out, that it may go to pay his debts.

The authorities cited by counsel for appellee rather sustain, and certainly do not contradict, this view of the matter.

In the case of *Rose* v. *Sanderson*, 38 Ill. 247, while the court holds that a statute, very much like the act of Congress relied on here, did not exempt from sale for the husband's

debt his life. interest in her real estate, which had become vested before the passage of the act, it is apparent, from the record, that the debt for which the writ of attachment was levied on that interest, existed when the statute of exemption was passed. The case states explicitly that the act went into effect April 24th, 1861, and the attachment was levied May 10th, 1861, and the husband's right, either by the curtesy or for the wife's life, had vested long before. It might, therefore, have been held to impair the obligation of the plaintiff's contract if the act had been so construed as to exempt that interest from liability to sale for that debt.

In the case of *Stehman* v. *Huber*, 21 Penn. St. 260, it was simply held that where, on a partition of an estate in which the wife was a part owner, the husband advanced a considerable sum as owelty in her behalf, he thereby became interested in the property allotted to her and conveyed to her and to him jointly, and that the husband, by executing a conveyance of this interest to a third person, who conveyed it to the wife, could not thereby defeat the existing creditor's right to appropriate that interest to the payment of his debts.

In the case of *White* v. *Hildreth*, 32 Vt. 265, on the other hand, there came before the Supreme Court of Vermont, for construction, a statute in regard to the debts of the husband very like the act of Congress. It enacted that the rents, issues, and profits of the real estate of any married woman, and the interest of her husband in her right in any real estate, which belonged to her before marriage, or which she may have acquired by gift, grant, devise or inheritance during coverture, shall, during coverture, be exempt from attachment or levy of execution for the sole debts of her husband, . . . provided this act shall not affect any attachment or levy of execution already made. Compiled Statutes of Vermont of 1850, p. 403, § 15.

In the case mentioned the husband had built upon and improved the land of the wife, after which she rented it to her son, in whose hands the rent was attached by trustee process for the debt of the husband. But the court said : " The legal title to the land, with the supervening improvements and build-

ing, is still in the wife. It accrued during coverture. The rent reserved in the lease to her son, is the rent of the land she owns. The statute expressly exempts such rent from the hands of his creditors. This provision of the statute seems to answer what otherwise must have been a well-founded suggestion, viz., that though this money is payable to the wife of the defendant, still it is not the rent of the freehold which the husband held by virtue of the coverture and the birth of issue capable of inheriting, and is, in contemplation of law, entirely the husband's without invoking the wife as the meritorious cause." Here the court holds distinctly that this statute, which does not profess to abolish the tenancy by the curtesy, is still an answer to an attempt to subject the rents and profits to his debts, because it declares that the property shall be exempt from levy for his debts.

In Oregon, the Constitution of the State declared that "the property and pecuniary right of every married woman, at the time of the marriage, or afterwards acquired by gift, devise or inheritance, shall not be subject to the debts or contracts of the husband." In the case of *Rugh* v. *Ottenheimer*, 6 Oregon, 231, it was held that this provision applied to marriages, and existing and property rights of the husband acquired before the Constitution was adopted, and that such property could not be subjected to the husband's debt, though he had wrongfully taken the title in his own name.

For these reasons, we are of opinion that the property levied on by the execution of the bank against Hitz is not subject to sale for his debt, and that the decree of the Supreme Court must be reversed and the case remanded to that court with directions to dismiss the bill.

*It is so ordered.*