Mr. Justice Cox
delivered the opinion of the Court.
William PI. Chadsey took out letters of administration in Illinois on the estate of his wife, who resided in Washington and died there. He files this bill against his wife’s brothers for an account of her personal estate in their possession. They answer, admitting the possession of certain dioses in action and a trifling sum of money belonging to the deceased, but denying the complainant’s right to the property. The case is heard on bill and answer.
Melinda A. Gillen and others, as next of kin of Mary J. Landric, deceased, obtained a rule in the Orphans’ Court, against her husband, to show cause why letters of administration on the estate of his wife should not be issued to them. He answered, admitting the possession of a small amount of money which had belonged to his wife, but claim *124 ing title to it as her husband. The case was certified to be heard here in the first instance.
The two cases present the question whether, since the passage of the Act of. April 10, 1869, commonly called the Married "Woman’s Act, the husband is entitled to the personal estate left by his deceased wife.
At common law the husband had a qualified right to his wife’s dioses in action. He could sue for them, and if he reduced them to possession during her life-time, they became his absolutely. If she died before they were reduced to possession, he was entitled to administer on her estate and recover them for his own use. Clancy, Husb. & Wife, p. 5.
The Act of Assembly of Maryland of 1798, chap. 101, subchap. 5, made a change in this respect by enacting, that “If the intestate be a married woman, it shall not, as heretofore, be necessary for her husband to take out letters of administration; but all her dioses in action shall devolve upon her husband in the same manner as if he had taken out such letters; provided, That if he shall not, in his lifetime, reduce the said dioses in action into possession, or obtain judgment thereon, the said dioses in action shall devolve upon her representative; and administration may be granted accordingly.”
The material inquiry is, how far these rights of the husband have been destroyed or modified and the pre-existing law on this subject changed, by the Married Woman’s Act of April 10, 1869, now embodied in Sections 727, 728, 729 and 730 of the Revised Statutes.
Just to the extent to which this is inconsistent with the Act of Assembly of 1798, and the common law, it must be held to have repealed and changed them; and just to the extent to which the old and the new law are consistent, they must both stand,
Section 727, Revised Statutes, enacts that “In the District, the right of any married woman to any property, real or personal, belonging to her at the time of marriage, or ac *125 quired during marriage, in any other Way than by gift or conveyance from-her husband, shall be as absolute as if she were unmarried.”
This, of course, is inconsistent with the rule of the common law which makes her right to her choses in action conditional upon her surviving her husband before he has reduced them to his possession, and, to that extent, changes the law.
The section proceeds “and shall not be subject to the disposal of her husband, nor be liable for his debts.” That is to say, according to correct grammatical construction, the right of the wife to her property shall not be subject to such disposal. This is inconsistent with the common law which gave the husband a right, during coverture, to transfer his wife’s rights to her choses in action, which was a technical reduction to possession by him.
Sections 728 and 729 provide that “Any married woman may convey, devise and bequeath her property, or any interest therein, in the same manner and with like effect as if she were unmarried;” and any married woman may contract and sue and be sued in her own name in all matters having relation to her sole and separate property, in the same manner as if she were unmarried.”
All this is inconsistent with the exclusive right with which the law invested the husband, of disposing of the wife’s property during coverture and instituting suits in regard to it.
It is also inconsistent with the husband’s right of disposal, after her death, notwithstanding she may have attempted to dispose of it by will or otherwise, during her life.
But if the wife should die leaving personalty, without having attempted to dispose of it by will or otherwise, a state of things is presented in regard to which the statute is entirely silent, there is nothing in it inconsistent with the previous law applicable to that case. The wife may have unlimited control during her life, but this is entirely consistent *126 with the husband’s right to the succession after her death, if she has retained her property and chosen to die intestate.
There is, therefore, no repeal, by implication, of the act of 1798, which would be the result of an inconsistency between that and the act of Congress.
And this conclusion is certainly in harmony with the manifest object of the law.
The evil of the old law was that the wife’s property, during her life-time, was at the mercy of her husband and liable to be wasted by him to her detriment; but it never was considered an evil that her relatives, perhaps collaterals in a remote degree, were not preferred, in the succession, to the husband. The law aimed at the protection of the wife; but it is hardly conceivable that the law makers’ solicitude extended to her relatives.
The title of the original act was “An act to Regulate the Rights of Property of Married Women, etc.” While it declares that the right of any married woman to her property should be as absolute as if she were unmarried, it nowhere declares that the right of her heirs or next of kin, in the event of her death, shall be the same, or that her estate shall descend or be distributed in like manner, as if she were unmarried. And no such idea is involved in this definition of her rights, because the question of succession pertains to the rights of her heirs and next of kin, and not to hers. As was well said in Vallance vs. Bausch, 28 Barb., 633, “The right of succession is not a right, but an incident of property given to it by law.”
The powers of suing, being sued and contracting, given by Section 729, are conferred in relation to the sole and separate property. These terms are apparently taken from the law of sole and separate. estates, as administered by courts of equity. But it seems to be the object of this law to create a new species of sole and separate property in regard to which the wife should hold the legal estate, instead of a mere equitable estate with powers of appointment, and yet *127 should have the sole and separate control of it, as against the husband, which could not be at common law.
But in defining this estate, it stops short at the death of the wife, if she dies intestate, just as do many marriage settlements and gifts to the separate use of married.women.
It is urged strongly that the effect of this silence ought to be the same in both cases. The case of the marriage settlement does seem analogous to the present; and in regard to that, the rule seems to be very well settled that where the terms of the settlement are silent as to the destination of the property after the wife’s death, the husband’s rights revive, or, in other words,- his common law rights then attach. Marshall vs. Beall, 47 U. S.; 6 How., 70 ; Stewart vs. Stewart, 7 Johns., ch. 245; White vs. Brown, 1 Md., ch. 192; Cooney vs. Woodburn, 33 Md., 328; Brown vs. Brown, 6 Hump., 127.
In Cooney vs. Woodburn, which was the case of a devise to a daughter for her sole and separate use, while she was still unmarried, the Court says: “The separate estate, the mere creature of a court of equity, is allowed and maintained for the benefit and protection of the wife against the improvidence and misfortune of the husband. Consequently, it has its existence and operation only during the period of the coverture; and whilst the legatee in this case remained discovert, the separate estate was dormant and without effect, though it was capable of arising and did arise, upon the happening of the marriage contemplated by the will; and upon the termination of the coverture by the death of the wife, such separate estate became absolutely void.”
To the same effect is Davis vs. Smith, 21 Am. Law Reg., N. S., 163, in which the Supreme Court of Missouri say: “ When a feme covert dies, her separate property ceases to be such, and stands on the same footing as any other she may have owned.”
And so, we think that the object of our statute is attained, at least in relation to personalty, which is the subject of the *128 present discussion, if we hold its effect to be simply to suspend the husband’s common-law and statutory rights during coverture, and to subordinate them also to the wife’s power of disposal.
In this view we are sustained by decisions upon similar statutes.
The case of Stockett vs. Bird, 18 Md., 484, recognizes this as the correct view.
The law of New York on this subject is substantially identical with ours.
In Ransom vs. Nichols, 22 N. Y., 110, it appeared that a note due to a married woman was paid, after her death, to her husband; and this was pleaded to an action brought upon it by a third person who had received letters of administration of the wife’s estate. The defense was sustained by the Court on the ground that the statutes in favor of married women being silent as to the distribution of their estates after their death, the husband’s common-law rights must prevail.
In Barnes vs. Underwood, 47 N. Y., 351, the facts were that a husband having administered on the personal estate of the wife, in possession, consisting of money, the surrogate adjudged the balance in his hands to belong to him, as against her next of kin; and this ruling was sustained by the Court of Appeals. That Court also disposes of the suggestion that the husband’s title can only exist after death where it attached in the life-time of the wife, and holds that instead of the husband having a right to administer only by virtue of a previous title to the property, he derives his title to the property through his right to administer. This, however, is applicable to choses in action only; for no administration was necessary in regard to choses in possession, since, the husband became absolutely entitled to them immediately on marriage.
As already mentioned, the husband, after the wife’s death, could only recover choses in action as her administrator. *129 Anciently, administrators held, for their own use, the surplus of personal estate after payment of the debts of the deceased. The Statute of Distributions of 22 and 23, Charles II requires this to be distributed among the next of kin; but the statute of 29 Charles II enacts that the former statute shall not extend to the estates of femes covert that shall die intestate, but that their husbands may demand and have administration of their rights, credits and other personal estates, and recover and enjoy the same as they have done before the making of the said act.
This is an answer to the objection that the husband’s right must attach, if at all, during the wife’s life, as far as it applies to dioses in action, because it shows that, at common law, a new title arose in the husband to this kind of property after the wife’s death, which would not be affected by the taking away of the title that he had during coverture.
This is not applicable to property in possession, which vested, once for all, in the husband at the time of marriage. But as we read the statute it operates equally on both classes of property by postponing and not destroying the husband’s rights, as known to the common law. The case of Barnes vs. Underwood, supra, related entirely to personal estate in possession, in the shape of money.
Nor are -we, in the least degree, embarrassed by the language of the Supreme Court of the United States in the case of Hitz vs. Nat. Metropolitan Bank, 111 U. S., 722, to the effect that “It was the purpose of the statute to abolish this tenancy by the curtesy, or any other interest of the husband in all her property, and to place her, in regard to it, in the condition of a feme sole.”
In that case the husband had not become tenant by the curtesy, for his wife was still living. His right to the rents and profits of his wife’s realty, during coverture, had accrued before the act of 1869 was passed, and was not in question, but was conceded. The only question before the Court was *130 whether this acknowledged common-law interest of the husband could be subjected to the claims of his creditors. It is manifest that the facts of the case did not call for the expression of an opinion on the effect of the statute on the husband’s rights, as against his wife or her heirs, or next of kin.
The conclusion of the Court was that, conceding the husband to have acquired, during his wife’s life-time, a tenancy by the curtesj^ in her property, the statute intended to exempt the property from liability to seizure for his debts. It was unnecessary to decide whether, after her death, his tenancy by the curtesy would not become consummate as at common law, as against her heirs. The general language before referred to must, therefore, be construed as referring only to rights existing during the wife’s life; or, if it has a more extended meaning, it must be considered a mere dictum by which that Court would not feel itself bound or expect us to be.
In the Chadsey Case, ive think the complainant entitled to the relief prayed; and in the Lcmdric Case, the prayer of the petition must be denied.