## SHEA *v.* McMAHON.

HUSBAND AND WIFE; EXONERATION AND REIMBURSEMENT; EVIDENCE; BURDEN OF PROOF; LACHES; WITNESSES.

1. A conveyance of real estate by a husband to his wife, whether made as a voluntary settlement or upon consideration of her relinquishment of her inchoate right of dower in other property, is good as against the husband and those claiming under him, and vests title in the wife free from the husband's control and subject to her power of sale and devise.

2. A wife who has mortgaged property given her by her husband, for his debt, is a surety merely of her husband, and as such, is entitled to exoneration of her estate and reimbursement from

her husband's estate; and if such a claim by her is sought to be defeated by showing that the mortgage was for her benefit or for the benefit of her estate, the burden of proof is upon the husband or those representing his estate.

3. Where a wife files a bill in equity for exoneration of her estate and for reimbursement for money raised by mortgage upon her property to pay her husband's debt, against the trustees of her husband's estate, four years after her husband's death, and nine years after the date of the mortgage, but before the mortgage debt has matured, such lapse of time can furnish no ground of defense.

4. In a suit by a widow to enforce a claim against her deceased husband's estate, she is a competent witness to testify in her own behalf as to the dealings with her husband which gave rise to the claim.

No. 910. Submitted November 23, 1899. Decided February 7, 1900.

HEARING on an appeal by the defendants from a decree of the Supreme Court of the District of Columbia, in a suit in equity by a widow against the trustees of her husband's estate, for exoneration of her estate and reimbursement for money raised by mortgage upon her property during her husband's lifetime, and claimed to have been used to pay his debt. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. George E. Hamilton* and *Mr. M. J. Colbert* for the appellants:

1. The property vested in the wife by virtue of the conveyance by Cullinane to Noonan and by Noonan to the complainant did not create in the wife either a statutory or equitable separate estate. *Hamilton* v. *Rathbone,* 9 App. D. C. 53; *Cammack* v. *Carpenter,* 3 App. D. C. 219.

It is contended that the complainant mortgaged her separate estate to the extent of $10,000, which she loaned to her husband or used in the payment of his obligations, because, although it is not contended that by virtue of the second mortgage any money actually passed, the case is precisely the same as if the wife had received the money and had

handed it over to her husband. Our answer to this contention is that the wife in this instance had no separate estate and was incapable of incumbering it by mortgage or otherwise unless her husband united with her in the deed of mortgage. The wife's estate in the property conveyed to her was not the wife's separate estate and was responsible for the payment of the husband's debts.

2. The wife was not a competent witness in her own behalf as to any matters of contract or agreement between herself and her husband. *Neiman* v. *Mitchell*, 2 App. D. C. 195.

3. Even if it be held that the wife in the present case may be entitled to exoneration out of her husband's estate or security, there is no sufficient proof that the husband ever promised to pay this debt contracted upon the wife's property. There can be no presumption in the present case arising out of the fact that the wife allowed her money, even if it be her money, to be used in the payment of her husband's debts, to the effect that she expected repayment. *Jenkins* v. *Middleton*, 68 Md. 540.

*Mr. Edmund Burke* and *Mr. R. Golden Donaldson* for the appellee:

1. The circumstances under which the lots were conveyed to the complainant and the consideration for which they were conveyed to her constituted said lots her sole and separate estate, as alleged by her in her bill in this cause. *Sykes* v. *Chadwick*, 18 Wallace, 141; *McCartney* v. *Fletcher*, 11 App. D. C. 1; 2 Story's Eq. Jur., Sec. 1380; *Sexton* v. *Wheaton*, 8 Wheat. 250; *Moore* v. *Paige*, 111 U. S. 117; *Clifton* v. *Jones*, 101 U. S. 228; *Jackson* v. *Jackson*, 91 U. S. 124; *Droop* v. *Ridenour*, 11 App. D. C. 224.

2. The wife's estate in lands not settled to her separate use in equity, nor created her separate estate by statute, may be mortgaged by her and her husband for the husband's debts, and if the husband makes default in paying the same, and the wife's lands thereby become chargeable, she will occupy

as to him the same relation as any other surety to the principal debtor, and would be entitled to exoneration out of his estate for any loss sustained by her by reason of such suretyship. Clancy on Husband and Wife (2d Am. Ed.), 589, Chap. 12; McQueen, Husband and Wife, 181, 182; 2 Roper on Husband and Wife, 143; *Aguilar* v. *Aguilar*, 5 Madd. 414; *Hudson* v. *Carmichael*, Kay, 613; *Cleaves* v. *Paine*, 1 De G., J. & S. 94, 95, 96; *Fitch* v. *Cotheal*, 2 Sand. Ch. 29; *Loomer* v. *Wheelwright*, 3 Id. 135; *Vartie* v. *Underwood*, 18 Barb. 562; *Miner* v. *Graham*, 24 Penna. St. 491.

3. The transaction resulting in the transfer of the deed of trust from the property of the husband to that previously conveyed to the wife constituted the complainant surety for her husband in respect of this indebtedness, and entitled her to the same rights and remedies against him and his estate as though she were a *feme sole*. 1 Jones on Mortgages, Secs. 113, 114, and notes; *Johns* v. *Reardon*, 11 Md. 465; *Bank* v. *Burns*, 46 N. Y. 170; *McFillen* v. *Hoffman*, 42 N. J. Eq. 144; *Medsker* v. *Bonebreak*, 108 U. S. 66; 14 Am. & Eng. Encyc. L. 586, 587; *Gahn* v. *Neimcewicz*, 3 Paige, 614: S. C., 11 Wend. 313; *Ayers* v. *Husted*, 15 Conn. 504; *Wilcox* v. *Todd*, 64 Mo. 388; *Huntingdon* v. *Huntingdon*, 2 Bro. P. C. 1: S. C., 2 Lead. Cas. Eq. 1922; Story's Eq. Jur., Sec. 1373; *Walker* v. *Walker*, 9 Wall. 743.

As against the appellee's case thus established, the appellants set up in their answer to the bill that a special contract was entered into between the appellee and said Cullinane. This averment of the answer, being matter by way of confession and avoidance and opposed to the presumption arising out of the transaction itself, the burden of proof rests upon the defendants. *McClellan* v. *Morrison*, 11 App. D. C. 467; *Dexter* v. *Gordon*, 11 App. D. C. 60.

4. The complainant under the statute was a competent witness. *Hobbs* v. *McLean*, 117 U. S. 579; *Droop* v. *Metzerott*, 18 D. C. 89; *Porter* v. *National Bank*, 102 U. S. 164; *Bank* v. *Jacobus*, 109 U. S. 275.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The bill in this case was filed by Mary A. McMahon, now Mary A. Dobbin, against the trustees under the will of John F. Cullinane, deceased, and others, to procure a decree exonerating her estate, and to obtain indemnity and reimbursement for money paid in discharge of a mortgage or deed of trust placed upon her property at the instance and for the accommodation of her first husband, John F. Cullinane, as surety for such mortgage debt. Upon the pleadings, exhibits and proofs, the court below decreed relief as prayed by the complainant, and the trustees under the will of the deceased, John F. Cullinane, have appealed to this court; the other defendants have not appealed.

By the bill of the complainant it is alleged in substance that she and John F. Cullinane were married in November, 1886; that her husband, John F. Cullinane, died in April, 1895, leaving the complainant his widow and one child surviving him; that being a man of considerable wealth, and being desirous of making a suitable provision and settlement upon his wife for her separate use, did, on the 21st of March, 1890, by a deed of that date, executed by himself and complainant, convey to the complainant's father, John Noonan, certain real estate, to wit, lots numbered 4, 5, 6 and 7, in square numbered 780, in the city of Washington, District of Columbia; all of which lots were improved by dwelling houses erected thereon, and were used and occupied by tenants paying rent therefor, and being of the aggregate value of about $30,000. That in pursuance of an understanding to that effect, the said John Noonan and his wife, on the 22d day of March, 1890, by their deed duly executed, acknowledged and recorded, conveyed said lots numbered 4, 5, 6 and 7, in square No. 780, to the complainant, then the wife of the said John F. Cullinane; that the purpose and object of said John F. Cullinane in executing the first of said deeds, and in procuring to be executed by the said

Noonan and wife the second of said deeds, was to vest in the complainant the entire legal and equitable estate in and to the said several lots and parcels of land in the said two deeds mentioned, in fee simple, as her sole and separate estate, free from the dominion and control of her husband; and that she did so hold and control said estate. These two deeds are conceded to have constituted one transaction, and were the means adopted of conveying the title of the property to the complainant, then the wife of said Cullinane.

The bill further charges, that John F. Cullinane, after this conveyance of lots 4, 5, 6 and 7, in square No. 780, to his wife, being the owner of lots Nos. 1 and 2 in square south of square numbered 439, and desiring to sell the same, found difficulty in making disposition thereof, owing to the existence of a mortgage or deed of trust thereon, for $10,000, with some eight years to run before maturity, and the party contemplating the purchase refused to consummate the same, unless and until the mortgage or deed of trust was removed or released; whereupon the said Cullinane undertook to relieve said lots from such mortgage or deed or trust, by having the charge thereof transferred to some other property; and that, in order to effectuate the transaction and to be able to sell the two lots, the said Cullinane requested the complainant and obtained her consent to join with him in the execution of two new promissory notes, aggregating the sum of $10,000, and a mortgage upon the lots in square 780, previously conveyed to the complainant, his wife, and who held the same in her own name; and that, as an inducement for her to join in the notes and mortgage, her said husband faithfully promised her that he would pay the principal of the notes at maturity, and would pay the interest thereon from time to time as it became due; that she, accordingly, did join in said notes and mortgage, to accommodate and relieve her said husband.

It is further alleged that Cullinane never paid any part

of the principal or interest due on the notes; but died leaving them wholly unpaid; that, to protect herself and her property from the consequences of default in payment, the complainant has paid the interest, and that the principal of said mortgage debt will become due and payable on the 12th day of April, 1898. That the said John F. Cullinane died seized of a large and valuable real estate, and he left a last will and testament, which has been admitted to probate; and by such last will and testament the testator appointed N. H. Shea and Mary E. Cullinane his executors, and they have fully administered and distributed the personal estate of the deceased. That by the will the said Shea and Mary E. Cullinane were also appointed trustees, to take charge of, manage and dispose of the real estate of the testator, as by the will they were directed; and they accepted said trust, and the same is being administered under the direction of a court of equity of this District.

The bill prays that the said trustees, Shea and Mary E. Cullinane, shall be decreed and required to pay said mortgage debt, with all interest that has accrued thereon, out of the real estate in their hands and control, as such trustees, and of which the testator died seized and possessed—his personal estate having been exhausted in the payment of his debts.

The trustees, the only appellants to this court, by their answer deny that the conveyance by the deceased husband, John F. Cullinane, to his wife, through her father, of the lots in square No. 780 was intended as a settlement made for the benefit of the wife; but that the fact was that Cullinane desired to dispose of his property in square south of square No. 439, and the complainant, then his wife, refused to unite in the conveyance for the purpose of extinguishing her inchoate right of dower, and that the consideration of the conveyance to her of the lots in square 780 was her relinquishing her contingent right of dower in the other property and the transfer to the property conveyed to her of the

mortgage then on the lots in square south of square 439, which the complainant herself assumed and promised to pay. The answer further denies that Cullinane, the husband, ever promised to pay the mortgage of $10,000 thus transferred, and avers that he never did pay any portion of either principal or interest. It is further averred by the answer that in January, 1895, the complainant separated from her husband, and at the time of his death was engaged in prosecuting a suit against him for divorce and alimony.

There has been evidence produced on both sides of the case, and in respect to some of the facts in proof the testimony seems somewhat at variance; especially in regard to the purpose and object of the conveyance to the wife of the lots in square No. 780, and the alleged understanding in regard to the assumption by the wife of the mortgage debt of $10,000 charged thereon. And there are some questions raised as to the competency of witnesses and the admissibility of evidence; but these are of secondary importance in the final result reached.

The principal question or questions presented by the bill, answer, exhibits, and the undisputed or well established facts of the case is, or are, whether the joint execution of the notes for $10,000, and the making of the mortgage of the lots in square 780 to secure payment of the notes, were for the accommodation and benefit of the husband; or whether the joint notes and mortgage were made and executed under an arrangement and understanding between husband and wife, as part of the transaction that resulted in the conveyance of the lots in square No. 780 to the wife, and that the latter assumed the said mortgage debt of $10,000 as her own debt, and charged the same upon the lots conveyed to her, in fulfillment of such understanding, and was therefore bound to pay the debt, and the interest thereon, without recourse against her husband or his estate for reimbursement.

As is shown by the allegations of the bill and the exhibits

filed in the case, the deed by Cullinane and wife to Noonan was dated March 21, 1890, and the deed from Noonan and wife to the complainant bears date the 22d of March, 1890, the day after the first deed. Both these deeds in terms are absolute conveyances of the estate in fee simple; the first for the recited consideration of ten dollars, and the second for the recited consideration of love and affection, and the further consideration of ten dollars; both deeds containing covenants of special warranty against all persons claiming under, by or through the grantors, and covenant for further assurance.

It is not claimed or pretended that there were any creditors of John F. Cullinane to be prejudicially affected by the conveyance to the wife; and, therefore, whether the conveyance of the property to her by the husband was by way of voluntary settlement, or was made on consideration of her relinquishing her contingent right of dower in property previously conveyed to third parties by the husband, or upon her agreement so to convey to extinguish her dower, ·is quite immaterial; as in either case, or upon both considerations combined, the conveyance to the wife was perfectly good and valid, as against the husband, his heirs at law, and against his devisees and trustees, claiming under his will. It is quite unnecessary, therefore, to inquire as to the fact, whether the conveyance to the wife was made upon one of these considerations or the other. Either was sufficient; and, from the date of the deed from Noonan and wife to the complainant, the estate in the lots was vested in the latter as her estate, free from the control of her husband, and subject to her power of sale or devise. *Sykes* v. *Chadwick*, 18 Wall. 141; *Hitz* v. *Nat. Met. Bank*, 111 U. S. 722; *Hamilton* v. *Rathbone*, 175 U. S. 414.

It is not denied or in any manner controverted that the original debt of $10,000, for which notes had been given, and for which a mortgage or deed of trust had been executed on the lots Nos. 1 and 2 in square south of square

No. 439, was the debt of the husband, and that this was
a subsisting debt of his on the 9th of April, 1890, the date
of the joint notes, and the deed of trust or mortgage made
and charged on the lots in square No. 780, in exchange
and substitution for the original notes and mortgage
charged on the lots in square south of square No. 439. It
is contended by the appellants that this was not only an
exchange and substitution of one security for another, but
it was the substitution of the principal liability of the
wife with a pledge of her property for the payment of the
debt, for the original primary liability of the husband, with
a mortgage of his property for payment; the latter security
being released. This, in one sense, may be conceded to be
the true condition of affairs, as between the wife and the
original creditor of the husband, who has been induced to
take the substituted security; but it does not necessarily
follow, by any means, that, as between the wife and the
husband, the debt secured by the pledge of the property of
the wife ceases to be the debt of the husband, or that she
may not be held and regarded as surety for the debt of the
husband, and be entitled to reimbursement as such surety.

The two notes are joint and several in their terms, the
wife appearing to have signed them first. The mortgage or
deed of trust made to secure these notes recites the fact that
the parties, mortgagors, are justly indebted to the party to
whom the notes were made payable; and further recites
that the parties desired to secure the debt. The equity of
redemption is reserved to the wife alone; but that is the
natural consequence of the fact that she was sole owner of
the property mortgaged. As will be observed, there is an
interval of time between the date of the conveyance to the
wife and the date of the substituted notes and mortgage
made by husband and wife, of about seventeen days; and
there is nothing on the face of the instruments themselves
that would in the slightest degree indicate that there had
been an agreement between husband and wife that the

latter had assumed the debt as her own, except the single circumstance that her name appears first to the notes. It would seem to be both natural and rational, if there had been such an agreement or understanding, that the instruments passing between the parties, to effectuate such an agreement, should furnish some evidence of it.

Upon this state of case, then, what are the *prima facie* rights of the parties to the transaction, whereby the substituted notes and mortgage were given? and upon whom does the onus of proof rest, in regard to the claim of exoneration and reimbursement set up in the bill?

There can be no question or doubt as to the general principle invoked by the complainant in this case, that whenever husband and wife mortgage the estate of the wife, whether it be her estate by inheritance or her estate settled upon her to her separate use, and the mortgage is for the benefit of the husband, the wife or her heirs, will be entitled, after the death of the husband, to have the estate of the wife exonerated out of the real and personal estate of the husband, her estate being considered only as a surety for his debt. This has been the settled doctrine of the courts of chancery, even long before the leading case of *Huntingdon* v. *Huntingdon*, decided in 1702, and reported in 2 Bro. Par. Cas. 1, and made the leading case in 3 Lead. Cas. Eq. 838.

Judge Story, in his work on Equity Jurisprudence, in section 1373, states the result of the authorities upon this subject, thus: "If a wife should unite with her husband to pledge her estate, or otherwise to raise a sum of money out of it to pay his debts, or to answer his necessities; whatever might be the mode adopted to carry that purpose into effect, the transaction would, in equity, be treated according to the true intent of the parties. She would be deemed a creditor or a surety for him (if so originally understood between them) for the sum so paid; and she would be entitled to reimbursement out of his estate, and to the like privileges as belong to other creditors."

The principle is just in itself, and it is therefore held, by an unbroken series of decisions, that where a mortgage is made of the wife's land, whether of an equitable or legal estate, to secure money borrowed or owing by the husband— *and in the absence of evidence to the contrary, the loan will be presumed to have been obtained for his use or purposes*—his estate, especially where he covenants to pay the debt (in this case he promised severally to pay the debt by the notes given), must therefore pay the mortgage money, at the instance of the wife, or her heirs; although the husband may have paid off the mortgage, and taken an assignment in trust for himself, etc. But if the money be borrowed for the use of the wife, or for the purpose of discharging debts contracted by her when sole, the mortgage will be considered as a charge on her estate, and no liability will attach on the husband; and where at the time of executing the mortgage of the wife's estate a settlement is made, whether before or after marriage, the husband's estate, as a general rule, will not be considered answerable to the wife's estate for the money borrowed or assumed to be paid; but particular circumstances may affect this as every other general rule. 2 Spen. Eq. 842; *Tate* v. *Austin,* 1 P. Wms. 264; *Jackson* v. *Innes,* 1 Bligh, 104; Sugd. Law of Prop. 172; *Robinson* v. *Gee,* 1 Ves. 262.

The rule upon this subject is well and accurately stated by the learned English annotators of the leading case of *Huntingdon* v. *Huntingdon,* 3 Lead. Cas. Eq. (3d Am. Ed.) 584, where it is said: "To entitle the wife to have her estate exonerated, it is not incumbent on her to show that the money was borrowed for the benefit of the husband; for the general rule is, that where a husband borrows money on the security of the wife's estate, as the money is under his power, it is supposed to come to his use; *and this turns the proof on him to show the contrary.* But, though this is the general rule, that the husband shall *prima facie* be liable, yet it is but an equity, and may therefore be rebutted by another

equity, viz., that the money was borrowed for the benefit of the wife, which may be set up by parol proof." *Kinnoul* v. *Money,* 3 Swanst. 208n; *Clinton* v. *Hooper,* 1 Ves. Jr. 173; *Hudson* v. *Carmichael,* Kay, 613.

In this country, the courts have asserted and maintained the doctrine of the English courts upon this subject to the fullest extent. They uniformly hold that the wife who has pledged her property for the debts of the husband is entitled to exoneration of her estate and reimbursement from the estate of the husband. *Johns* v. *Reardon and Wife,* 11 Md. 465. And if the right of the wife to exoneration or reimbursement from the estate of the husband be sought to be defeated by showing that the money raised by the mortgage of the wife's estate was not for the husband's benefit, or was for the benefit of the wife, the onus of proof in such case is upon the husband or those representing his estate. This is fully exemplified by many cases; as in the case of *Loomer* v. *Wheelwright,* 3 Sandf. Ch. 135, where it was held that the relation of surety is made out in such case by showing that it was the husband's debt or that he received the money advanced. If the money were used for the benefit of the wife or her property or any circumstances exist which will defeat her claim to be regarded as a surety, it must be proved by the party alleging such fact. And so in the case of *Vartie* v. *Underwood,* 18 Barb. 562, where the property mortgaged had come to the wife from her father, the court, in discussing the question of the right of the wife to reimbursement from her husband's estate, said:

"The principle is well settled by authority that the wife who also joins with her husband in a mortgage of her own property to secure his debts or the payment of money loaned to him is the surety merely of her husband, and is entitled to all the rights and privileges of surety. 3 Paige, 614: S. C., 11 Wend. 312; 9 Paige, 200; 2 Sandf. Ch. 29; 3 Sandf. Ch. 135. Numerous other cases might be cited. It is contended on behalf of the creditors that it must be

affirmatively shown by the wife that she did in fact unite in the mortgage as a surety for her husband, and that it was expected and agreed he should pay the debt, and that there was no such proof before the referee. No such proof was necessary. It was shown that the debt was due from the husband, and that the mortgage was given to secure it. The money was loaned to him. This establishes the fact that the wife was surety, as was expressly held in *Loomer* v. *Wheelwright, supra.* No other proof would be required in any other case, and there is no reason for requiring other proof in favor of the wife. Being a surety, the law presumes that the principal not only agreed to pay the debt, but to indemnify the surety against loss."

This *prima facie* case, however, may be overcome by proof to show that the mortgage of the wife's property was not in fact intended for the accommodation and benefit of the husband, but was in fulfillment of an assumption of the debt by the wife. This defense is put forth in the answer. By the answer of the trustees it is averred that the lots in square No. 780 were conveyed to the wife because of the husband's desire to dispose of his other property in square south of square No. 439, but the wife refused to join him in any conveyance thereof until he conveyed to her the lots in square 780. That the conveyance to Noonan, the father of the wife, was merely the conduit through whom the title should pass from husband to wife, and that the latter became seized of the estate, not to her sole and separate use, but as a gift or conveyance from her husband, and that she held the same as at common law. As we have already stated, the manner of acquiring the estate by the wife, whether by inheritance or by settlement to her separate use, is wholly immaterial. The question is, whether the estate was in reality pledged for her own use and benefit, or for her husband's debt, and for which he remained responsible as between the wife and himself? It is averred in the answer, " that *before* the said John F. Cullinane conveyed

the property in square 780 to his wife it was expressly understood and agreed between himself and his wife, that the $10,000 mortgage then existing on the lots in the square south of square 439 should be transferred therefrom and placed on square 780, and should be paid by the wife and not by the husband; and that it was further understood that if the wife would join in the execution of a conveyance of the said lots in square south of square 439 the said Cullinane, the husband, *would convey to her the equity in said lots in square No. 780*, over and above the said deed of trust of $10,000; and the defendants deny that said Cullinane ever undertook to pay either interest or principal of the $10,000 notes, upon being transferred to square 780, and that, as matter of fact, he never did pay any of the interest on said notes."

If these averments of the answer were sustained by the proof in the case, it would be quite clear, according to the authorities to which we have referred, that the claim of the complainant as surety of her former husband could not be sustained. The onus of proof, however, is upon the trustees, holding and representing the real estate of the deceased husband, to make out and support the defense thus set up by the answer. The circumstances relied upon to establish the truth of the averments of the answer are greatly wanting in probative force. In the first place, and as opposed to the defense made by the answer, we have the positive testimony of John Noonan, the father of the wife, and through whom the title to the lots was conveyed to the wife, that when the conveyance was made, though he appears to have borne a confidential relation to his daughter, he had never heard it mentioned or suggested that the conveyance was contemplated and intended as a part of a transaction whereby the mortgage then existing on lots in square south of square 439 was to be raised and transferred to lots in square 780, embraced in the deed to the wife. He did not even know at that time that the sale of lots in square south

of square 439 was the subject of negotiation by the husband.
Then, we have the testimony of the wife, examined on her
own behalf, and she testifies most positively that no such
agreement or understanding existed as that set up in the
answer; and that it was not until some time after the con-
veyance made to her through her father, that she was
approached by her then husband upon the subject of trans-
ferring the then existing mortgage on the lots in square
south of square 439 to the lots that had been conveyed to
her in square No. 780. And further, that in agreeing to
the transfer of the mortgage debt from square south of
square 439 to her property in square 780, she not only did
not agree to assume such debt as her own, but that such
transfer was for the benefit and accommodation of her hus-
band, and he promised to pay and discharge such mortgage
debt.

This testimony of the complainant in her own behalf
derives strong support from the testimony of Mr. Glover,
one of the trustees and holders of the mortgage on the lots
in square south of square No. 439, and that of Mr. Block,
who was negotiating for the purchase of these lots, and by
whose testimony the time is fixed when the negotiation and
circumstances occurred in relation to the sale of the lots in
square south of square No. 439—showing the date of that
transaction to have been subsequent to the time of the con-
veyance to the wife of the lots in square No. 780. The
objection was not made to the existence of the mortgage on
lots in square south of square 439 until after the deed was
made to the wife for the lots in square 780; and there is
no evidence whatever that the change or transfer of the
$10,000 mortgage from the one property to the other was
ever the subject of conversation or arrangement between
husband and wife until some time after the deed to the
wife, and just prior to the date of the joint notes and mort-
gage by husband and wife, and the release of the property
in square south of square 439. Indeed, there is nothing

that points with any considerable degree of probability to the alleged fact that the transfer of the mortgage from one property to the other was made upon agreement of husband and wife, as part of the transaction resulting in the conveyance of the lots in square 780 to the wife, and that the latter agreed to assume and pay the debt. That there was such an agreement and assumption by the wife is the theory upon which the claim of the complainant is resisted by the trustees under the will of John F. Cullinane, and upon which all the argument is founded for the reversal of the decree below.

Of course, this defense by the trustees may be established as well by circumstantial evidence, if it be strong enough to produce conviction, as by positive and direct proof. But the surviving widow ought not to be deprived of her property, unless it be upon clear proof to overcome her *prima facie* right to what she claims.

There are several circumstances relied upon by the trustees which are supposed to have a tendency to support the defense set up in the answer. The first of these is the fact that the complainant paid the interest on the notes from time to time as it accrued due, thus showing that she regarded the debt as her own. But what was she to do to avoid this alternative ? The mortgage was liable to forfeiture and foreclosure upon failure to pay any instalment of interest that became due. Her husband did pay the first instalment of interest that became due on the notes; but he seems to have been for most of the time after that, up to the time of his death, not in a condition to attend to business. Therefore, if the wife had not paid the interest, the mortgage might have been foreclosed, and the wife turned out of possession; so that the paying the interest under the circumstances can have but little weight as evidence to show that she regarded the debt as her own, and not that of her husband.

Then, the circumstance of her name being first subscribed

16 Ct. App.—7

to the notes, is urged as showing that the notes were given for her debt, instead of that of her husband. This circumstance is of a very equivocal character in its meaning as evidence, and while it is without any material significance in itself, it might, in connection with other circumstances, have some weight attached to it. But standing as it does, without material support from other facts and circumstances, it amounts to but little as evidence to reflect upon the intention of the parties to the transaction, or as showing their contractual relation. The notes were joint and several; and they were none the less the notes of the husband, as principal debtor, because the wife happened to place her name before his in signing the notes.

Then, again, the value of the property conveyed to the wife is much emphasized, as indicating an improbability that property of such value would be conveyed to the wife, either in consideration of her having joined in deeds to relinquish her contingent right of dower, or as a voluntary settlement for the protection of his wife and family; and, therefore, as contended, we must suppose the beneficial interest really intended to be conveyed to the wife to be only the equity of redemption upon payment of the mortgage debt. This does not comport with the terms of the deed. A reasonable estimate of the value of the property conveyed to the wife is between $27,000 and $30,000. The husband was a large owner of real estate in this city, and the property of the value of that conveyed to the wife does not appear to have been extravagant or out of proportion to his wealth, as means for the support of the wife and her child. He was bound to support them; and, at any rate, there is nothing in the value of the property conveyed to make the transaction as presented by the wife an improbable one, and so improbable as to justify a court of equity in saying that it can not be supported.

It was also urged in argument that the time that was allowed to pass before the claim of the complainant was

made upon the estate of the deceased husband, is a circumstance that should be considered against the claim. But it must be remembered that the debt did not mature until about the 12th of April, 1898 ; and the original bill in this case was filed March 22, 1898. The lapse of time, therefore, could furnish no ground of defense.

An exception is taken as to the competency of the complainant to testify in her own behalf. It is not perceived upon what ground this exception can be maintained. This is not an action against executors or administrators (the personal estate of the deceased having been fully administered), nor is any decree sought to be obtained against any of the defendants as executors or administrators of the deceased. The decree is sought against the trustees under the will of the deceased, requiring them to pay out of the realty in their charge the debt for which the property of the wife was made liable. If the surviving widow could not be a witness in such case there would be but slight protection to the married woman who has dealt with her husband, given by the statute passed professedly for her protection. This question, however, of the competency of the wife to testify in her own behalf, in a proceeding to enforce a claim against the estate of her deceased husband, would seem to be completely settled for this District by the decision of the Supreme Court of the United States in the case of *Stickney* v. *Stickney*, 131 U. S. 227. That was a proceeding in equity instituted in the Supreme Court of this District, by the widow of a deceased husband against his heirs at law to enforce a claim against his estate. In that case it was held by the Supreme Court that the widow, the complainant in the case, was competent to testify, under the acts of Congress, and to disclose as a witness directions given by her to her husband respecting the investment of her separate property, though she could not be compelled to make such disclosure against her wishes. Rev. Stat. Dis. of Col., Secs. 876, 877.

As to the manner and degree of literal strictness with

which the evidence act is construed, in respect to the proviso in the statute, excluding surviving parties as witnesses in cases where the executor or administrator of a deceased party to a contract or transaction is plaintiff or defendant in the cause, see cases of *Hobbs* v. *McLean*, 117 U. S. 567, 579; *Nat. Bank* v. *Jacobus*, 109 U. S. 275. In view of these authorities we think the objection to the competency of the witness can not be sustained.

There is also an exception, taken by the complainant, to the competency of Mr. Colbert, the solicitor and counsellor who prepared the deed from Cullinane to Noonan for the lots in square No. 780, intended to be conveyed to and vested in the wife of the grantor. This objection, as we understand it, is based upon the ground of privileged communication as between attorney and client. But the objection presents a question that is not very material to the case. Mr. Colbert is very decided in his opinion, (though the information upon which that opinion was formed does not appear to have been derived from the complainant, and therefore that opinion or conclusion might be objectionable,) that the deed for the lots in square No. 780 was not a voluntary gift or settlement by the husband upon the wife, but was made upon consideration that the wife would join the husband in conveying the property in square south of square 439. He does not, however, profess to have knowledge as to the fact whether the wife ever agreed to assume the mortgage debt of $10,000, and make it a charge upon the property conveyed to her, to the exoneration and discharge of the husband, as between the husband and wife. Without this fact proved by his testimony, the evidence given by him is of no material bearing in the case; and therefore, the question of the competency of this witness is not of importance to be decided.

Upon careful examination of the whole record, we find nothing in it that would require or justify the reversal of the decree of the court below, and therefore that decree must be affirmed; and it is so ordered. *Decree affirmed.*