# Richmond.

CHILTON AND OTHERS v. HANNAH AND OTHERS.

January 16, 1908.

1. HUSBAND AND WIFE—*Tenancy by Marital Right—Liability for Debts.*—
At common law the husband, immediately upon marriage, became
entitled to the rents, issues and profits of the wife's freehold lands,
independent of birth of issue. The right was vested by the mar-
riage, and the interest of the husband was liable for his debts.

2. MARRIED WOMEN—*Property held under Act March, 1900—Liability for
Husband's Debts.*—The Act of March, 1900, declaring that all
property of married women theretofore or thereafter acquired should
be free from the debts and liabilities of their husbands is, so far
as it affects debts and liabilities of husbands created after the date
of the act, a valid exercise of legislative power, although the act
preserves the husband's right of courtesy. The legislature has power
to abolish credit altogether.

Appeal from a decree of the Circuit Court of Appomattox
county. Decree for the complainants. Defendants appeal.

*Reversed.*

The opinion states the case.

*Kirkpatrick & Howard,* for the appellants.

*Caskie & Coleman* and *H. D. Flood,* for the appellees.

HARRISON, J., delivered the opinion of the court.

The record in this case shows that, in 1869, Chapman H.

Chilton and Mary E. Elliott were married, and that in the same year they came into the possession of 320¼ acres of land, which was the maiden land of the wife, having come to her under the will of her father, W. A. Elliott. The husband and wife are still living, and they have continuously occupied, used and enjoyed the property to the present time.

At common law, as soon as this property was turned over to Chilton and wife as the wife's share of the real estate of her father, the husband became entitled to the rents, issues and profits during the coverture. This tenancy of the husband by virtue of the marital right was independent of the birth of issue, depending only upon two conditions—the marriage, and the possession by the wife of a freehold estate. Burks' Separate Estate, p. 3; *Porter* v. *Porter,* 27 Gratt. p. 599, 602; *Garland* v. *Pamplin,* 32 Gratt. 312.

This right of the husband, by virtue of his marriage, to the rents, issues and profits of the wife's land during coverture was a vested right. *Dold* v. *Geiger,* 2 Gratt. 98; *Poindexter* v. *Jeffries,* 15 Gratt. 363. See also *McNeer* v. *McNeer,* 142 Ill. 388, 32 N. E. 681, 19 L. R. A. 256, and note. Such an interest was at common law liable for the husband's debts. *Muse* v. *Friedenwald,* 77 Va. 62; *Garland* v. *Pamplin,* 77 Va. 305-314.

Whether or not it can be subjected to the payment of the judgments against the husband which are asserted in this case, depends upon the proper construction of the following statute, passed in March, 1900, (Va. Code, 1904, sec. 2286a) which, so far as it affects the case at bar, is as follows: "A married woman shall have the right to acquire, hold, use, control and dispose of property, as if she were unmarried, and such power of use, control and disposition shall apply to all property of a married woman heretofore or hereafter acquired; provided, however, that her husband shall be entitled to curtesy in her real estate when the common law requisites therefor exist, and he shall not be deprived thereof by her sole act; but the right to

curtesy shall not entitle him to the possession or use, or to the
rents, issues and profits of said real estate during the coverture;
nor shall the property of the wife be subject to the debts or lia-
bilities of the husband."

The judgments which are here sought to be enforced, were
obtained in April, 1901, more than one year after the legislature
had passed the act in question. It further appears that the
foundation of these judgments was damages claimed against
Chapman H. Chilton for insulting words published by him of
and concerning the appellees, respectively. The judgments,
therefore, are not based upon debts which existed against the
husband prior to the act of March, 1900.

In our view of the case, we are not concerned with the ques-
tion, whether or not the legislature has the power to take away
from the husband his vested marital right. The husband is not
complaining that he has been deprived of such right. Nor are
we concerned with the legislative power to provide that the
wife's property shall not be liable for the debts of the husband
existing at the time such legislative declaration was made; for
no such debts are here asserted. The sole question to be deter-
mined in this case is whether or not the legislature has the
power to declare that the wife's property shall not be subject to
the debts or liabilities of the husband arising after the passage
of the act.

It is true, as contended, that the policy of this state is that
property shall be liable to the satisfaction of the debts of its
owner; but it is equally true that when the act in question was
passed, the legislature could make exceptions as broad as it
pleased. It had the power to abolish credit altogether. *Home-
stead Cases,* 22 Gratt. 266, 12 Am. Rep. 507.

There can be no question that the act of March, 1900, ex-
empts the wife's property from liability for the husband's
debts—not only property thereafter acquired, but the property
she then owned and to which the husband's marital right had

attached. What effect this provision might have, as impairing the obligation of the contract of a creditor, whose debt existed at the time the statute was passed, we need not decide. As applied to debts thereafter created, it did no one injustice.

It is contended on behalf of the appellants that they do not seek to subject the wife's property, which the act says shall not be liable, but that they ask to subject the husband's property, which is his vested marital right in the wife's property. A reasonable construction of the statute does not justify this contention. It was the purpose of the legislature to exempt from liability to the husband's debts the right of a married woman to any property, personal or real, belonging to her at the time of marriage, or acquired during marriage, although the husband might then hold therein some right of present control. It was this same property, belonging to the wife when married, or subsequently acquired, and not part of it—no separate interest or estate in it—which was exempted from liability for his debts.

Further answering the contention of appellants, we cannot do better than to employ the language of Mr. Justice Miller in construing a similar statute passed by Congress for the District of Columbia. After declaring the contention here made to be a very narrow view of the statute, the learned justice, speaking for a unanimous court, says: "We are of opinion that the statute intended to exempt all property which came to the wife by any other mode than through the husband from liability to seizure for his debts, without regard to the nature of the interest which the husband may have in it, or the time it accrued, and that in regard to such debts, created after the passage of the law, no principle of law or morals is violated by the enactment. On the contrary, if we concede, as in the present case, that the husband had acquired a tenancy by curtesy in her property before such enactment, it is eminently wise and just that no other person should afterwards acquire such an interest in it as to disturb the joint possession of it, and turn the family re-

sulting from the marriage out, that it may go to pay his debts." *Hitz* v. *National Metropolitan Bank,* 111 U. S. 722, 28 L. Ed. 577, 4 Sup. Ct. 613.

For these reasons we are of opinion that, with respect to the judgments here asserted, the act of March, 1900, is valid, and, therefore, they cannot be enforced against the property sought to be subjected in this proceeding.

The decree complained of must, therefore, be reversed; and, this court proceeding to enter such decree as the circuit court should have entered, it is ordered that the bill be dismissed.

*Reversed.*